(No. 36090.—)

APEX MOTOR FUEL COMPANY, Appellant, *vs.* EDWARD J. BARRETT, County Clerk, *et al.*, Appellees.

*Opinion filed October 31, 1960.*

HAROLD P. REYNOLDS, of Chicago, for appellant.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, and EDWARD J. HLADIS, of counsel,) for appellees.

ROBERT S. CUSHMAN, of Chicago, (JOHN J. O'BRIEN, of counsel,) *amicus curiae,* on behalf of The Civic Federation.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Apex Motor Fuel Company a taxpayer and owner of real estate in the city of Chicago, brought an action in the circuit court of Cook County against the county clerk and other county officers to declare invalid certain 1959 amendments to the Revenue Act of 1939, and to restrain the disbursement of public funds thereunder. Robert S. Cushman was granted leave to appear as *amicus curiae* on behalf of the Civic Federation. After a hearing the court entered judgment sustaining validity of the legislation, and plaintiff appeals. Although some testimony was heard, no factual questions are involved. The issues are whether the amendments are inconsistent with each other, and, if not, whether they comply with certain constitutional requirements.

The complaint attacks the amendments made by Senate Bill No. 368, House Bill No. 295, Senate Bill No. 868, House Bill No. 530 and House Bill No. 1036, all passed by the 71st General Assembly at its regular session in June, 1959. (Laws of 1959, pp. 659, 2035, 1558, 1180 and 1567.) On this appeal the arguments are concerned with the validity of provisions in Senate Bill 368 and Senate Bill 868 which purport to change the assessment dates of real estate for tax purposes. Under section 43 of the Revenue Act of 1939, prior to the amendments of 1959, all taxable real

estate was subject to quadrennial assessment as follows: "On or before June 1, 1954, and every fourth year thereafter, in all counties having a population of less than 500,-000 inhabitants, and as soon as he reasonably can in the year 1955, and every fourth year thereafter, in all other counties, the assessor in person or by his deputy shall actually view and determine as near as practicable the value of each tract or lot of land listed for taxation as of April 1 of such year * * *." (Ill. Rev. Stat. 1957, chap. 120, par. 524.) Under the amendment made by Senate Bill 368 the county board of each county having a population of 500,000 or more is directed to divide the county into four assessment districts, numbered 1 to 4 inclusive. For district No. 1 the quadrennial assessment years are designated as 1961, 1964 and every fourth year thereafter; for assessment district No. 2 the quadrennial assessment years are 1962, 1965 and every fourth year thereafter; for assessment district No. 3 the quadrennial assessment years are 1963, 1966 and every fourth year thereafter; and for assessment district No. 4 the quadrennial assessment years are 1963 and every fourth year thereafter. On October 27, 1959, the board of commissioners of Cook County, acting in accordance with the foregoing provisions, adopted a resolution dividing the county into four assessment districts. The districts follow township lines and are based on a study and analysis of area, number of building permits, number of parcels, and last assessed valuation. Plaintiff's real estate is located in district No. 3.

Plaintiff's first contention is based upon the fact that in House Bill No. 395, which changed the quadrennial assessment years for downstate counties, and in Senate Bill No. 868, which changed the assesment and lien date for real-estate taxes from April 1 to January 1, the language of the existing section 43 was retained in other respects. Senate Bill 368, which amends section 43 by creating the four assessment districts in Cook County having staggered

quadrennial assessment years, was passed on June 30, 1959, at the 10:30 A.M. session of the House. Both House Bill 295 and Senate Bill 868 were passed later on the same day. It is argued that the provisions of the latter two bills are in conflict and inconsistent with the amendment made by Senate Bill 368; that under the rule laid down in *People ex rel. Schlaeger* v. *Mattes,* 396 Ill. 348, the later amendment in point of time controls; and that the assessment of real property in all counties should therefore continue to be made quadrennially without the creation of four assessment districts in Cook County.

The contention cannot be accepted. The evident purpose of the General Assembly was to amend the existing law in several different respects which are not inconsistent with each other. Portions of old law which are repeated in an amending act are regarded as a continuation of the existing law rather than the enactment of new law on the subject; and where two amendments passed at the same session of the legislature are not so inconsistent that both cannot be given effect, provisions in the later one which are merely re-enactments of former law do not repeal an intermediate amendment. The intermediate act will be deemed to remain in force and to modify the new act in the same manner as it did the first. *People ex rel. Brenza* v. *Fleetwood,* 413 Ill. 530.

In the *Mattes case,* upon which plaintiff relies, two amendments passed at the 1941 session of the General Assembly purported to increase the 1942 corporate tax limit applicable to Cook County in different amounts and in different ways. They were therefore in conflict and so inconsistent that both could not be given effect, and it was held that the later amendment in point of time controlled. In the case at bar, on the contrary, each of the amendatory acts has a separate and distinct purpose, the only conflict being that which results from a repetition in the later acts of language in section 43 as it existed prior to 1959. In

rejecting a contention similar to the present one, this court in the *Fleetwood case* explained the cause of the problem as follows: "Section 13 of article IV of the Illinois constitution requires that when an existing statute is to be amended 'the section amended, shall be inserted at length in the new act.' So each bill which proposes to amend an existing statute must include not only the language necessary to effect the desired change, but must also repeat all the other provisions of the section being amended, even though they have no direct bearing upon the subject matter of the amendment. And when, as has frequently happened, two unrelated amendments to the same section are adopted at a single session of the General Assembly, the repetition in each bill of those provisions of the existing law which that particular bill does not propose to change will give rise to a surface inconsistency." The repetition in House Bill 295 and Senate Bill 868 of language in section 43 as it existed when the present bills were introduced indicates an intention to comply with the constitutional requirement, rather than an intention to repeal the new amendment made by Senate Bill 368, and each of the amendments is to be given effect.

The principal objection is that the assessment scheme effected by Senate Bill 368 violates the uniformity requirement of article IX of the constitution. Plaintiff argues that because of fluctuation in real-estate values, properties in assessment districts other than the one for which the quadrennial assessment is being made will in all probability be assessed at values either lower or higher than those upon which the current assesment is based. Thus in 1963, for example, real estate in district No. 3 (which includes plaintiff's property) will be taxed on its assessed value as of that year, whereas similar properties in district No. 1 will be taxed on the basis of a 1961 assessment, and in district No. 2 on the basis of a 1962 assesment. It is insisted that because the fair cash value of real estate varies from year

to year the assessment of similar property located in another assessment district having a different quadrennial assessment year will be higher or lower than that of plaintiff's property, resulting in an inequality of assessment within the same taxing district.

Uniformity in taxation, as required by the constitution, implies equality in the burden of taxation, and this equality in burden cannot exist without uniformity in the basis of assessment as well as in the rate of taxation. (*Bistor* v. *McDonough,* 348 Ill. 624.) The rule of uniformity requires an equality of taxation in proportion to the value of the property taxed. It prohibits the taxation of one kind of property within the taxing district at one value while the same kind of property in the same district for taxation purposes is valued at either a grossly less value or a grossly higher value. *People ex rel. Wangelin* v. *Gillespie,* 358 Ill. 40.

Within this constitutional limitation, however, the General Assembly has the power to determine the method by which property may be valued for tax purposes. (See *Anderson* v. *City of Park Ridge,* 396 Ill. 235, 244.) The constitutional provision for uniformity does not require that property be assessed on any particular day or on the same day (*Heidenway* v. *Harding,* 336 Ill. 606, 614) ; nor does it call for a mathematical equality. The requirement is satisfied if the intent is evident to adjust the burden with a reasonable degree of uniformity and if such is the effect of the statute in its general operation. A practical uniformity, rather than an absolute one, is the test. *Crozer* v. *People ex rel. Hanberg,* 206 Ill. 464; 51 Am. Jur. 202, Taxation, sec. 152.

When the system provided by Senate Bill 368 is so tested, it is evident that no violence is done to the requirement of uniformity. Plaintiff's argument based on fluctuation in real-estate values between the different quadrennial assessment years fails to show such a gross inequality as

to render the act void. There is not necessarily a substantial discrepancy between real-estate values in one year and those in another, nor is there any evidence in the present record showing that by virtue of the present statute the plaintiff's property is in fact assessed higher than similar property in another assessment district. This court has recognized that real estate is not generally subject to extreme fluctuations in value over a period of four years. (*Crozer* v. *People ex rel. Hanberg,* 206 Ill. 464, 470); and in any event it is hardly a fact, of such common knowledge that a court will take judicial notice, that real-estate values always fluctuate materially during such period. It cannot be said, therefore, that the system of staggered assessment years provided by Senate Bill 368 inherently leads to a lack of substantial uniformity. On the contrary, it is obviously intended as a practical plan, designed to ensure an approximate equality in the burden of taxation throughout the taxing district. Furthermore, under section 146 and 148a of the Revenue Act of 1939, as amended in 1959, the Department of Revenue is directed to equalize assessments by assessment districts, in a county having 500,000 inhabitants or more. (Ill. Rev. Stat. 1959, chap. 120, pars. 627 and 629a.) Means are thus provided whereby discrepancies in valuation as between different districts can be removed.

The provisions of Senate Bill 368 disclose no attempt to systematically depart from the standards of uniformity and equality required by the law. There is no doubt that in the adoption of such act the General Assembly was attempting to solve the serious administrative problem created by the necessity to complete a timely assessment of the many parcels of real estate in Cook County within the same quadrennial year. The record in the case at bar indicates that under the present system the time required in making the quadrennial assessment and hearing complaints is not sufficient to allow the work to be done efficiently; that the assessor is obliged to recruit a large force of extra

employees during this period, many of whom are inexperienced; that delays result which costs the municipal bodies in Cook County large sums of money in interest on tax warrants to finance operations during the delays; and that the difficulties presently encountered will be obviated by staggering the quadrennial assessment years in the manner provided by Senate Bill 368. The particular method of ascertaining values for assessment purposes is a matter to be worked out under legislative authority; and unless the method adopted produces a gross inequality, the courts will not interfere.

Legislation dividing counties into several districts for assessment purposes, and providing for staggered assessment years, has been held valid in other States, over constitutional objections similar to those raised by the plaintiff in the case at bar. Thus in *Rogan* v. *County Commissioners of Calvert County*, 194 Md. 299, 71 A.2d 47, a Maryland statute enacted in 1943 directed a State tax revision commission, after consultation with local assessing authorities, to establish five districts or five classes of property in each county, and to require that the property in one of such districts or classes be reassessed each year in rotation. Five districts were accordingly established in Calvert County, and in other counties, the first district in Calvert County to be reviewed in 1944, the second district in 1945, the third district in 1946, the fourth district in 1947, and the fifth district in 1948. In *mandamus* proceedings to compel the county commissioners to review and reassess property in the first assessment district, defendants contended that the use of 1944 prices as a standard of value would violate the constitutional rights of taxpayers in the first district until reassessments were made in the second, third, fourth and fifth districts, where properties were assessed according to 1941-1942 market prices. In rejecting the contention the court pointed out that "perfect uniformity in assessments is impossible" (71 A.2d at 52), and further de-

clared: "We specifically hold that the method of assessessment prescribed by the Maryland statute, by which a County is divided into five districts, and the assessments are reviewed in one district each year, so that all assessments in the County will be reviewed during the period of five years, does not violate the Fourteenth Amendment of the Federal Constitution, provided that there is no intentional and arbitrary discrimination. The fact that the review by rotation is merely partial and temporary tends to show lack of intention to discriminate." 71 A.2d at 51.

In *Hamilton* v. *Adkins,* 250 Ala. 557, 35 So.2d 183, a plan was upheld whereby a county was divided into four districts and the assessments were reviewed and equalized in only one district at a time, so that four years would elapse before all assessments in all districts could be reviewed and equalized. In holding that the scheme did not violate a constitutional command that taxes on property "shall be assessed in exact proportion to the value of such property," the court observed that such requirements "are aimed at securing a practical and common sense equality in taxation. Exact equality is not to be expected nor is it required." (35 So.2d at 188.) In the case at bar we conclude that a practical and common-sense equality is likewise maintained under the provisions of Senate Bill 368, and that no violation has been shown, either of the uniformity principle in the Illinois constitution or of the equal protection clause in the United States constitution.

Plaintiff further complains that since the plan of Senate Bill 368 applies in effect only to Cook County, it constitutes a local or special law prohibited under section 22 of article IV of the Illinois constitution. This contention must also be rejected. The controlling rules are well settled, and it is unnecessary to discuss the many decisions applying them. Classification on the basis of population is not objectionable where there is a reasonable basis therefor in view of the object and purposes to be accomplished by the legislation;

and such an act is not local or special merely because it operates in only one place, if that is where the conditions necessary to its operation exist. (*People ex rel. Moshier* v. *City of Springfield,* 370 Ill. 541; *People ex rel. Lindheimer* v. *Schweitzer,* 369 Ill. 355; *People* v. *City of Chicago,* 349 Ill. 304; *Mathews* v. *City of Chicago,* 342 Ill. 120.) It is evident in the case at bar that a reasonable basis exists for the distinction. Densely populated counties contain a great number of parcels of real estate to be assessed, and present problems of complexity and detail not encountered in more sparsely populated counties. Clearly the time and work required in completing a quadrennial assessment is much greater; and it is not unreasonable to conclude that a division into districts, each having a separate quadrennial assessment year, is necessary for the proper discharge of such duties in counties having a population of 500,000 or more, but not necessary in counties of less population. The classification is based upon a rational difference of situation or condition, and is not subject to the constitutional infirmity urged by plaintiff.

It is next contended that Senate Bill 868, which amends certain sections of the Revenue Act of 1939 by changing the assessment date for real estate to January 1, is in conflict with the provisions of Senate Bill 368 and House Bill 295 because the latter two bills recite or retain the April 1 assessment date, and that the former law should therefore remain unaffected. This contention is similar to plaintiff's first contention discussed above, and for the reasons already stated is without merit. When the amendments are read together, in the light of the necessity to repeat in each bill provisions of existing law which that particular bill is not designed to change, it is readily apparent that no irreconcilable conflict exists.

The final contention is that the amendment made by Senate Bill 868 is unconstitutional because the assessment and lien date was changed only as to real estate, leaving

April 1 as the assessment date for personal property. The argument is based upon the factor of fluctuation in market values, and it is urged that the different assessment dates for the two classes of property results in a lack of uniformity and equality. The contention is answered, *a fortiori*, by what we have said herein with reference to the constitutionality of Senate Bill 368. In any event it has long been settled that uniformity requirements are not violated by statutes providing for the valuation of real estate on one date and the valuation of personal property on another. (*Thomas* v. *Gay,* 169 U.S. 264, 42 L.ed. 740; *Worton* v. *City of Paducah,* 123 Ky. 44, 93 S.W. 617.) Whether one class of property is to be assessed on a different day than is another class, and whether January 1, April 1 or some other date is appropriate for valuation of a particular kind of property, are matters of legislative discretion, and the designations or selections are presumed to have reasons in special facts known to the General Assembly.

We conclude that no conflict has been shown in the amendments questioned, and that none has been shown to be unconstitutional or void. The judgment of the circuit court is correct and it is hereby affirmed.

*Judgment affirmed.*