Docket No. 83072–Agenda 15–November 1997.

RICHARD T. WALSH 
et al.
, Appellees, v. THE PROPERTY TAX APPEAL BOARD 
et al
., Appellants.

Opinion filed February 20, 1998.

JUSTICE HEIPLE delivered the opinion of the court:

“His horse went dead, and his mule went lame,

And he lost six cows in a poker game;

Then a hurricane came on a summer day,

And blew the house where he lived away;

An earthquake came when that was gone,

And swallowed the land that the house stood on;

And then the tax collector came around,

And charged him up with the hole in the ground.”
(footnote: 1)
In this case we consider the practice of the tax collector, in the person of the Tazewell County board of review, of calculating assessed values for like properties on different bases: to wit, as a percentage of recent sales price as opposed to the so-called “mass appraisal method.” Specifically, we allowed the instant petition for leave to appeal by plaintiffs Richard T. Walsh and Barbara J. Welsch (166 Ill. 2d R. 315) to consider whether the appellate court erred in invalidating the revised assessment of plaintiffs' jointly owned Tazewell County property, known as the Herget House. The appellate court held that the Tazewell County board of review violated the uniformity clause of the Illinois Constitution when it raised the assessed valuation of the Herget House, along with some 39 other properties, based upon the property's recent sales price when virtually all other parcels of property in the county were assessed using the mass appraisal method. 286 Ill. App. 3d 895. For the reasons expressed below, we affirm.

BACKGROUND

To facilitate the uniformity of taxation compelled by acticle IX, section 4, of the Illinois Constitution 1970, the General Assembly has enacted the Property Tax Code to govern, 
inter alia
, the basis upon which real property is valued for purposes of collecting property tax revenue. Ill. Const. 1970, art. IX, §4(a); 35 ILCS 200/1–1 
et seq.
 (West 1996). The Property Tax Code provides that, in general assessment years, each assessor’s office “shall actually view and determine as near as practicable the [fair cash] value of each property” as of January 1 of each general assessment year. 35 ILCS 200/9–155 (West 1996). Fair cash value is defined as “[t]he amount for which a property can be sold in the due course of business and trade, not under duress, between a willing buyer and a willing seller.” 35 ILCS 200/1–50 (West 1996). Fair cash value is synonymous with fair market value and, as such, an arms-length sales transaction is the best evidence thereof. Once fair cash value determinations are made, each property receives an assessed valuation based upon 33% of the fair cash value. 35 ILCS 200/9–155 (West 1996). General assessment years in counties with less than 3 million persons, such as Tazewell County, shall take place quadrennially. 35 ILCS 200/9–215 (West 1996).

Contrary to the Property Tax Code's mandate, there has not been an “actual viewing to determine the fair cash value” of any Tazewell County property since the 1957 general assessment year. In each ensuing general assessment year, Tazewell County has applied what is known as the “mass appraisal method” for determining the fair cash value for all Tazewell County properties. The mass appraisal method supplants fair cash valuations by on-site viewings with fair cash valuations based upon the assessment-sales ratio statistics compiled by the Illinois Department of Revenue, which are gathered for the entirely different purpose of equalizing assessments on an intercounty basis. See 35 ILCS 200/17–5 (West 1996). The Department of Revenue annually determines assessment-sales ratios for each county by comparing the fair cash value determinations of the local assessors with the value of properties as evidenced by, 
inter alia
, an average of recent arms-length sales prices in the county or township at issue. Simply put, the assessment-sales ratio is tantamount to an average rate of appreciation for a given township or county. The mass appraisal method of property assessment simply adds the Department of Revenue's sales-assessment ratios for the three years preceding the general assessment year to arrive at an average rate of appreciation for properties in the county. Each property therein is then assigned a new fair cash value equal to the previous assessed valuation multiplied by this factor.

In Tazewell County's Pekin Township, where the Herget House is located, the Department of Revenue's assessment-sales ratios totaled 11.7% for the three years preceding the 1992 general assessment year. Thus, the Pekin Township assessor, as in every other general assessment year since 1957, raised the fair cash value of Pekin Township properties by the sales-assessment ratio factor. As a result, the assessor increased the assessed valuation of the Herget House 11.7% to $40,850.

Plaintiffs did not contest the assessor's assessed valuation of the Herget House. Rather, various other Pekin residents complained to the Tazewell County board of review that the Herget House had been underassessed given its recent sales price of $355,000. Observing that the Property Tax Code sets the assessed value of property at 33% of fair cash value, they argued that the Herget House should have received an assessed value of $118,333, some $77,000 more than the Pekin assessor's $40,850 assessed valuation. 35 ILCS 200/9–155 (West 1996). In response to these complaints, the Tazewell County board of review exercised its statutory prerogative (35 ILCS 200/16–30 (West 1996)) and raised the assessed valuation of the Herget House and some 39 other properties in the vicinity to reflect 33% of the true fair cash value, as evidenced by their recent sales prices. Accordingly, the board of review raised the assessed value of the Herget House from $40,850 to $100,000, which raised the property tax bill from $3,830.46 to $9,441.40. The plaintiffs appealed the revised assessment to the Property Tax Appeal Board, arguing that the revised assessment violated the uniformity clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §4(a)). Specifically, plaintiffs contended that basing the Herget House's assessed value on the true fair cash value as evidenced by its recent sales price resulted in the property's being taxed at a different proportion of its true value than Tazewell properties which had been assessed using the mass appraisal method. In support, the plaintiffs pointed to evidence that the assessed value of other Pekin Township properties recently sold ranged from 7% to 68% of their true fair cash value as indicated by their recent sales prices.

The Property Tax Appeal Board found that the plaintiffs had not shown by clear and convincing evidence that the Herget House had been overassessed or that the revised assessment violated the Illinois Constitution's uniformity clause or the United States Constitution's equal protection clause. In support, the Property Tax Appeal Board noted that the assessed value of the Herget House was slightly less than 33% of the fair cash value as evidenced by the sales price, and thus was not excessive. As for the constitutional arguments, the Property Tax Appeal Board found that neither the Illinois nor the United States Constitution was violated because the sales-assessment ratio for the Herget House, slightly lower than 33%, was well within the 7% to 68% range for other Pekin properties. Moreover, the Property Tax Appeal Board found plaintiffs' comparisons to other Tazewell County properties unpersuasive given the unique history, location and size of the Herget House.

The appellate court reversed, finding that the removal of the Herget House from the mass appraisal system of valuation violated the uniformity clause of the Illinois Constitution of 1970. In affirming the appellate court, we base our decision on the Illinois Constitution's uniformity clause, and thus do not reach the plaintiffs' arguments that the revised assessment also violated the United States Constitution's equal protection clause.
(footnote: 2)
ANALYSIS

The Illinois property tax scheme is grounded in acticle IX, section 4, of the Illinois Constitution of 1970, which provides in pertinent part that real estate taxes “shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law.” Ill. Const. 1970, art. IX, §4(a). Uniformity requires equality in the burden of taxation. 
Kankakee County Board of Review v. Property Tax Appeal Board
, 131 Ill. 2d 1, 20 (1989). This, in turn, requires equality of taxation in proportion to the value of the property taxed. 
Apex Motor Fuel Co. v. Barrett
, 20 Ill. 2d 395, 401 (1960). Thus, taxing officials may not value the same kinds of properties within the same taxing boundary at different proportions of their true value. 
Kankakee County Board of Review
, 131 Ill. 2d at 20. The party objecting to an assessment on lack of uniformity grounds bears the burden of proving the disparity by clear and convincing evidence. 
Kankakee County Board of Review
, 131 Ill. 2d at 22.

Here there can be no question that plaintiffs have established, by clear and convincing evidence, that the uniformity clause of the Illinois Constitution has been violated. The evidence presented by both the board of review and the plaintiffs disclosed that sales-assessment ratios for other Pekin Township properties ranged from 7% to 68%. This astonishing range of assessed values, as a percentage of true values as evidenced by recent sales prices, results directly from Tazewell County's utilization of the mass appraisal valuation method since 1957. At the time of the Pekin Township assessor's 1992 assessments, many Pekin properties had assessed values unrelated to their true fair cash values. Some properties were overvalued, while others were undervalued. The Herget House fell into the latter category, enjoying a sales-assessment ratio of 11.5% at the time the Pekin Township assessor applied the Department of Revenue's 11.7% assessment-sales factor appreciation figure to the Herget House for the 1992 general assessment year.

To the extent that Pekin Township's assessed valuations bear little relationship to true fair cash value, they result in the unequal sharing of the collective tax burden and thus violate the Property Tax Code, as well as the Illinois Constitution's uniformity clause. 35 ILCS 200/9–145 (West 1996) (requiring valuations at 33% of fair cash value); Ill. Const. 1970, art. IX, §4(a) (requiring that taxes be leveled “uniformly 
by valu[e]
” (emphasis added)). That having been said, it must be noted that the uniformity clause restricts the manner by which Tazewell County may attempt to correct such disparities. The Illinois Constitution's uniformity clause requires not only uniformity in the level of taxation, but also in the basis for achieving the levels. 
Kankakee County Board of Review
, 131 Ill. 2d at 20.

Simply put, Tazewell County must use the same basis for determining assessed valuations for all like properties. 
Kankakee County Board of Review
, 131 Ill. 2d at 20. A necessary corollary to this most basic of principles is that Tazewell County must likewise apply any attempts to alter the basis for assessing values in a uniform manner. Accordingly, Tazewell County cannot use the recent sales price of the Herget House to calculate the assessed value of plaintiffs' property without doing so for all other like properties.

In an attempt to side-step this precept, the Property Tax Appeal Board argues that the Herget House is a unique historical property without any “like” properties for purposes of comparison. But even assuming this to be the case, such is immaterial in the instant context. The plaintiffs do not contest the fair cash value ascribed to their property, readily conceding that it is $355,000. Rather, they contend that the Tazewell County board of review has arrived at an assessed valuation of their property on a different basis than that employed for the vast majority of other Pekin Township properties, thus resulting in plaintiffs arbitrarily paying property taxes on a greater percentage of their property's fair cash value than do other property owners. This violates the uniformity clause prohibition against taxing properties at different proportions of their true fair cash value. 
Apex Motor Fuel Co.
, 20 Ill. 2d at 401.

Tazewell County's utilization of the mass appraisal method to calculate Pekin Township assessed valuations for 40 years has resulted in many Pekin properties enjoying sales-assessment ratios below the statutory 33% of fair cash value. These properties thus contribute less than their fair share of the collective tax burden, in conflict with article IX, section 4(a), of the Illinois Constitution. Ill. Const. 1970, art. IX, §4(a); 
Apex Motor Fuel Co.
, 20 Ill. 2d at 401. Notwithstanding, the Tazewell County board of review may not adjust plaintiffs' assessed valuations to reflect 33% of its true fair cash value without doing so for all like properties.

“[The] great central and dominant idea of the constitution is uniformity of taxation, and no power exists or should exist in any corporate authority to go counter to this command of the fundamental law. Therefore one person cannot be compelled to pay a greater proportion of taxes, according to the value of his property, than another, 
and where assessors have disregarded the injunction of the law and made an assessment of property far below its real cash value, their misconduct must also follow the principle of uniformity and their assessments of all persons must be at the same proportional value.
” (Emphasis added.) 
People's Gas Light & Coke Co. v. Stuckart
, 286 Ill. 164, 173 (1918).

To hold otherwise would sanction assessed valuations on different proportions of like properties in direct contravention of the uniformity clause. Ill. Const. 1970, art. IX, §4(a); 
Kankakee County Board of Review
, 131 Ill. 2d at 20.

Logic and taxation may not be the “best of friends” (
Sonneborn Brothers v. Keeling
, 262 U.S. 506, 522, 67 L. Ed. 1095, 1103, 43 S. Ct. 643, 648 (1923) (McReynolds, J., concurring)), but until such time as Tazewell County systematically ascribes true fair cash value to all like properties, plaintiffs are entitled to the benefits they have accrued under a uniform, though flawed, basis of valuation. The judgment of the appellate court is affirmed.

Appellate court judgment affirmed.

FOOTNOTES
1:
Author unknown.

2:
While the basis for the appellate majority's judgment was clearly that the Illinois Constitution's uniformity clause had been violated, it at one point briefly commented that the plaintiffs were the victims of a constructive fraud. Constructive fraud, however, was not, and could not have been, alleged by the plaintiffs because such actions must be brought in the circuit court and not in an administrative review action such as the instant case.