SIXTH DIVISION
May 14, 2010

Nos. 1-08-3291 and 1-08-3292, Consolidated

| | | |
|---|---|---|
| CALUMET TRANSFER, LLC, | ) | Petition from |
| | ) | the Illinois Property Tax |
| Petitioner-Appellant, | ) | Appeal Board |
| | ) | |
| v. | ) | |
| | ) | |
| THE PROPERTY TAX APPEAL BOARD; THE COOK | ) | |
| COUNTY BOARD OF REVIEW; and THE CHICAGO | ) | Nos. 0327670 |
| BOARD OF EDUCATION, | ) | 0425665 |
| | ) | 0328386 |
| Respondents-Appellees. | ) | 0425663 |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Petitioner, Calumet Transfer, LLC, appeals two final orders by respondent, the Illinois Property Tax Appeal Board (PTAB). Petitioner argues PTAB erred as a matter of law in holding that the sale of property through bankruptcy defeats the presumption that the sale was "in the due course of business and trade, not under duress, between a willing buyer and a willing seller" (at arm's length) (35 ILCS 200/1-50 (West 2002)). Petitioner argues in the alternative that PTAB's determination of fair cash value in this case was against the manifest weight of the evidence. We affirm.

There are two parcels of property at issue. The first, which we will refer to as the "coke production property," is a 96.5-acre, irregularly shaped, industrial-zoned property located east of

the Calumet River to South Burley Avenue and between 111th and 114th Streets, in Chicago. The property was improved with several buildings of varying age, function and condition, including an inoperable coke (carbonized coal) production facility. Plaintiff purchased the property in December 2002 from LTV Steel Company, which was in bankruptcy at the time. Plaintiff paid $850,000 for the property and the bankruptcy court approved the sale.

The second, which we will refer to as the "blast furnace property," is 89.92 acres and adjoins the coke production property to the north. Like the coke production property, the blast furnace property was zoned for industrial use and fronted the Calumet River. The property was owned in 2003 by Acme Steel, which was also in bankruptcy at the time. Acme sold the improvements to the land, which included an old Acme blast furnace facility, to a scrap company for $250,000. Petitioner purchased the nonimproved land for $880,000 on December 4, 2003. The bankruptcy court approved the sale subject to petitioner assuming responsibility for back taxes owed on the property. Petitioner paid a total consideration of $1,117,282.14 for the blast furnace property.

The assessed value of the properties, which is the value placed on the properties by the Cook County assessor's office for property tax purposes, reflected fair market values much higher than the amounts petitioner paid for the properties. The coke production property had an assessed value of $1,051,100 for the 2003 tax year and $1,050,704 for the 2004 tax year, reflecting an approximate fair market value of over $2.9 million. The blast furnace property had an assessed value of $667,720 for the 2003 and 2004 tax years, reflecting a fair market value of approximately $1.9 million.

2

1-08-3291 and 1-08-3292, Cons.

Petitioner filed separate complaints with the Cook County Board of Review (Board of Review) to reduce the 2003 and 2004 assessed values of each property to reflect the amounts petitioner paid for the properties. The Board of Review denied petitioner relief on his complaints. Petitioner appealed the Board of Review's decisions separately to PTAB. PTAB granted leave to the Chicago Board of Education (CBE) to intervene.

Hearings were held in each case. Alan Beemsterboer, petitioner's creator and manager, testified at both hearings about the circumstances surrounding the sales and the condition of the properties. Beemsterboer said he believed he paid fair market value for the properties, saying both sales were conducted at arm's length. Real estate appraiser Howard Richter testified on behalf of petitioner at both hearings. Richter said petitioner paid fair market value for both properties and rejected the suggestion that the sale of property sold through bankruptcy is sold under duress. William Enright testified on behalf of the CBE at both hearings, saying the amounts petitioner paid for the properties did not reflect fair market value because the sellers were in bankruptcy at the time and were under pressure from their creditors to sell. Enright appraised the coke production property and the blast furnace property each at approximately $3.5 million. Richter and Enright submitted written appraisals to support their respective opinions. The appraisals were based in large part on comparable property sales.

PTAB held in both cases that the evidence was insufficient to warrant a change in assessed value. PTAB gave little weight to the price petitioner paid for the properties, saying the fact the properties were subject to bankruptcy proceedings at the time of sale called into question the arm's-length nature of the transactions. PTAB concluded the assessed values of the

3

1-08-3291 and 1-08-3292, Cons.

properties in 2003 and 2004 were supported by comparable property sales and denied petitioner relief.

Petitioner appeals both PTAB decisions to this court under section 16-195 of the Property Tax Code (35 ILCS 200/16-195 (West 2002)). Appeal No. 1-08-3291 involves the coke production property. Appeal No. 1-08-3292 involves the blast furnace property. The appeals were consolidated on this court's motion.

There are "three types of questions that a court may encounter on administrative review of an agency decision: questions of fact, questions of law[] and mixed questions of fact and law." Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 210, 886 N.E.2d 1011 (2008). Our standard of review depends on the type of question presented. Cinkus, 228 Ill. 2d at 210. An agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct and will not be overturned unless they are against the manifest weight of the evidence. Cinkus, 228 Ill. 2d at 210. Where the question is legal, on the other hand, our review is not as deferential. Cinkus, 228 Ill. 2d at 211. We review questions of law *de novo*. Cinkus, 228 Ill. 2d at 211.

Petitioner raises two issues on appeal. The first involves a question of law and is reviewed *de novo*. The second involves findings of fact and is reviewed under the manifest weight of the evidence standard of review.

Property in Illinois is assessed for property tax purposes as a percentage of "fair cash value," which is synonymous with fair market value. See Cook County Board of Review v. Illinois Property Tax Appeal Board, 384 Ill. App. 3d 472, 480, 894 N.E.2d 400 (2008). Fair cash

4

1-08-3291 and 1-08-3292, Cons.

value is defined by statute as "[t]he amount for which a property can be sold in the due course of business and trade, not under duress, between a willing buyer and a willing seller." 35 ILCS 200/1-50 (West 2002). Section 1910.65(c) of Title 86 of the Illinois Administrative Code (86 Ill. Adm. Code §1910.65(c), amended at 21 Ill. Reg. 3706, 3721, eff. March 6, 1997) specifies the type of evidence that may be considered in determining fair cash value. That section reads:

"Proof of the market value of the subject property may consist of the following:

1) an appraisal of the subject property as of the assessment date at issue;

2) a recent sale of the subject property;

3) documentation evidencing the cost of construction of the subject property including the cost of the land and the value of any labor provided by the owner if the date of construction is proximate to the assessment date; or

4) documentation of not fewer than three recent sales of suggested comparable properties together with documentation of the similarity, proximity and lack of distinguishing characteristics of the sales comparables to the subject property." 86 Ill. Adm. Code §1910.65(c), amended at 21 Ill. Reg. 3721, eff. March 6, 1997

The best evidence of fair cash value is an arm's-length sale. Walsh v. Property Tax Appeal Board, 181 Ill. 2d 228, 230, 692 N.E.2d 260 (1998).

Petitioner argues PTAB erred by holding, as a matter of law, that the sale of property

5

1-08-3291 and 1-08-3292, Cons.

through a bankruptcy proceeding is, by its nature, not an arm's-length transaction. We disagree with petitioner's characterization of the PTAB decisions here. PTAB did not hold, as petitioner suggests, that a sale through bankruptcy cannot be considered an arm's-length transaction as a matter of law. Rather, PTAB allowed the CBE to challenge the arm's-length nature of the transaction by offering evidence of comparable property sales. This was permissible under paragraph (4) of section 1910.65(c) (86 Ill. Adm. Code §1910.65(c)(4), amended at 21 Ill. Reg. 3721, eff. March 6, 1997).

In a related argument, petitioner argues PTAB erred as a matter of law by considering evidence outside of the sale price to determine the properties' fair cash value. Petitioner cites People ex rel. Korzen v. Belt Ry. Co. of Chicago, 37 Ill. 2d 158, 161, 226 N.E.2d 265 (1967), and cases like it, which stand for the proposition that "a contemporaneous sale between parties dealing at arm's length is not only relevant to the question of fair cash market value, [citations] but would be practically conclusive on the issue of whether an assessment was at full value." Petitioner's argument assumes the absence of evidence calling into question the arm's-length nature of the transactions here.

The CBE argues that the sellers, LTV Steel Company and Acme Steel, were under duress to sell the properties to satisfy their creditors. In support, the CBE submitted comparable property sales that suggested petitioner paid below the fair market value for the properties. There is no provision in the Property Tax Code that restricts PTAB's authority to consider such evidence. To the contrary, paragraph (4) of section 1910.65(c) specifically allows evidence of comparable property sales to prove fair market value. 86 Ill. Adm. Code §1910.65(c)(4),

6

1-08-3291 and 1-08-3292, Cons.

amended at 21 Ill. Reg. 3721, eff. March 6, 1997.

Petitioner argues in the alternative that PTAB's findings are against the manifest weight of the evidence. In reviewing petitioners' argument, we treat PTAB's findings and conclusions on questions of fact *prima facie* true and correct. Cinkus, 228 Ill. 2d at 210. We cannot reweigh the evidence or substitute our judgment for that of PTAB. Cinkus, 228 Ill. 2d at 210. We consider only whether PTAB's findings are against the manifest weight of the evidence, meaning an opposite conclusion is clearly evident. Cinkus, 228 Ill. 2d at 210.

We begin our analysis with the coke production property. The assessed value of that property was $1,051,100 in 2003 and $1,050,704 in 2004, reflecting a fair market value of over $2.9 million or $30,000 per acre. Petitioner bought the property in December 2002 for $850,000, or $8,808 per acre.

Petitioner's expert, Howard Richter, testified the amount plaintiff paid for the coke production property represents the property's fair market value. Richter supported his opinion with comparable property sales. The first property used for comparison is a vacant lot located between petitioner's property and residentially zoned property that sold for $3,450 per acre in June 2003. Richter next compared the blast furnace property, which petitioner bought for $9,786 per acre (not including back taxes) in December 2003. The third property is located immediately south of the coke production property and sold in January 2001 for $18,385 per acre. Richter acknowledged on cross-examination that the first two comparison properties were subject to bankruptcy proceedings at the time they sold. Richter also admitted that the $18,385-per-acre price of the third property represented the amount the parties to that sale believed the land was

7

worth. The property with improvements sold for $4.5 million, or $55,154 per acre.

The CBE's expert, William Enright, testified he appraised the coke production property at $3.5 million in 2003 and $3.6 million in 2004, or approximately $37,000 per acre. Enright relied on five comparable property sales. The properties were all located within three miles of the coke production property and sold between February 2000 and February 2002 for about $19,000 to $76,230 per acre. Enright said he did not give significant weight to the price petitioner paid for the coke production property because the property was sold through bankruptcy and was below typical prices for comparable land.

PTAB concluded the evidence was insufficient to warrant a reduction in the assessed value of the coke production property. PTAB placed little weight on the price petitioner paid for the property, saying the circumstances surrounding the sale called into question whether the sale represented fair market value. PTAB also gave little weight to the first two comparable property sales used by Richter to formulate his opinion on the ground that those properties were sold while in bankruptcy as well. PTAB found the third comparable property used by Richter was similar to the coke production property in size and location. But PTAB rejected Richter's suggestion that PTAB use the $18,385-per-acre value placed on the land without improvements because the coke production property was not sold as vacant land. PTAB concluded: "[a]fter considering all the evidence[,] including the experts' testimony and submitted documentation as well as the adjustments and differences for sale date, location, condition of the land, building conditions and type of legal conveyance in the [petitioner's] and intervenor's suggested comparables, the PTAB finds that the subject's current 2003 and 2004 assessments are supported

8

1-08-3291 and 1-08-3292, Cons.

by these comparable sales contained in this record."

Petitioner argues there was no evidence contesting the arm's-length nature of the coke production property sale and that absent such evidence, PTAB's rejection of the sale price as conclusive evidence of fair market value was against the manifest weight of the evidence. We disagree. The CBE presented evidence of comparable property sales much higher than the price petitioner paid for the coke production property. This evidence was sufficient to call into question the arm's-length nature of the transaction.

We next consider the blast furnace property. Petitioner bought this property in December 2003 for $880,000, or about $9,800 per acre. The assessed value for the property in 2003 and 2004 was $667,720, reflecting a fair market value of about $1.9 million or $21,000 per acre.

Richter testified at the hearing before PTAB that he believed petitioner paid fair market value for the blast furnace property. Richter used the same comparable property sales he used to determine the value of the coke production property except that he used the coke production property as his second comparable property. Enright testified he believed the blast furnace property was worth $3.5 million in 2003 and $3.6 million in 2004. Enright also used the same comparable property sales he used in the coke production property case.

PTAB concluded there was insufficient evidence to warrant a modification in the assessed value of the blast furnace property. PTAB did not place significant weight on the price petitioner paid for the property, finding the circumstances of that sale were called into question by the bankruptcy nature of the transaction. PTAB gave considerable weight to comparable properties that sold between July 2000 and July 2004 for $8,411 to $55,154 per acre. As in the

9

1-08-3291 and 1-08-3292, Cons.

coke production property case, we find PTAB's decision supported by the evidence.

We affirm both PTAB decisions.

Affirmed.

McBRIDE and R. GORDON, JJ., concur.