FIFTH DIVISION
July 30, 2010

No. 1-08-2060

| | | |
|---|---|---|
| THE COOK COUNTY BOARD OF REVIEW, | ) | Petition for Review of an |
| | ) | Order of the Illinois |
| Petitioner, | ) | Property Tax Appeal Board. |
| | ) | |
| v. | ) | |
| | ) | |
| THE PROPERTY TAX APPEAL | ) | |
| BOARD, an Administrative Agency, | ) | |
| and CRESTWOOD CONDOMINIUM | ) | |
| ASSOCIATION, Taxpayer, | ) | |
| | ) | |
| Respondents. | ) | |

JUSTICE HOWSE delivered the opinion of the court:

Following a hearing, the Illinois Property Tax Appeal Board (PTAB) issued a decision modifying the assessed value of the properties at issue for 2004 and 2005. The Cook County Board of Review (Board) petitioned for review of the PTAB's order. On appeal, the Board contends: (1) the PTAB erred as a matter of law in holding the Crestwood Condominium Association (Crestwood) proved a violation of uniformity by clear and convincing evidence; (2) the PTAB erred as a matter of law by setting assessments that are not equitable or supported by the evidence; and (3) the PTAB's findings were against the manifest weight of the evidence. For the following reasons, we affirm the PTAB's decision.

FACTS

1-08-2060

Crestwood is a 30-year-old residential community located in Des Plaines, Illinois. The Crestwood property consists of 154 buildings, each of which has the same floor plan layout and square footage. One hundred and fifty-two of the buildings are configured identically, each being divided into three 2-bedroom units, two large one-bedroom units and a smaller one-bedroom unit. The remaining two buildings are each divided into two 2-bedroom units and four larger one-bedroom units. When they were developed, all 154 buildings received an individual property identification number (PIN).

In 2002, 12 of the 154 buildings were legally subdivided into 72 individual dwelling units. In 2004, 12 additional buildings out of the remaining 142 buildings were subdivided into 72 individual dwelling units. Each individual unit received its own separate PIN for property tax assessment purposes.

For the year 2003, all of the buildings were assessed the same, at $36,879 a piece. As of January 1, 2004, the subdivided individual units were assessed at $6,959, $6,185, $5,670, or $5,669, depending on their size, for an average of $37,628 per subdivided building. The remaining unsubdivided buildings received total assessments of $55,350, or an average of $9,225 per living unit. Two exceptions applied to the assessments: first, the county valued one entire unsubdivided building at

$37,637; second, the county valued some of the other subdivided buildings at $55,343 per building. The assessments remained the same in 2005.

Crestwood appealed the 2004 and 2005 assessments to the PTAB. In its briefs in support of the appeals and in its summary judgment motions, Crestwood alleged all of the buildings in the development were substantially similar, and the fact that 13 of the 154 buildings were assessed lower violated the Illinois Constitution's requirement that property tax assessments be uniform. Crestwood alleged the county assessor and the board of review allowed for the disparate treatment in the assessment of the various buildings in the development based on whether or not the buildings were subdivided into individual condominium units. Crestwood requested that the assessed values of the 141 buildings assessed at $55,350 be reduced to the same assessment as the 13 buildings assessed at $37,628.

The Board submitted its "Board of Review Notes on Appeal," wherein the subject properties' 2004 and 2005 final total assessments were disclosed. The assessment summary noted 124 buildings were assessed at $55,350; 1 building was assessed at $37,637; 11 individual condominium units were assessed at $5,670; 10 individual condominium units were assessed at $5,669; 22 individual condominium units were assessed at $6,959; and 22

individual condominium units were assessed at $6,185. The Board's representative presented an analysis prepared by the Board outlining the properties' market values before and after being subdivided. A summary of the sales of the properties' subdivided individual units was also submitted by the Board. According to the Board's evidence, the average selling price for the six individual condominium units in each of the subdivided buildings indicated the aggregate value of the subdivided buildings averaged $697,500 in 2004 and 2005. All of the unsubdivided buildings and individual units in the subdivided buildings were classified as 299 condominiums, the only recognized class of condominiums in Cook County.

During the hearing before a PTAB hearing officer, Crestwood called Sandra Hannon, Crestwood's property manager. Hannon testified there is no difference in the overall square footage in the buildings or the units. She said the six-unit buildings were selling for between $550,000 and $575,000 during 2004 and 2005. Individual units sold for an average of $110,000. Hannon testified the monthly assessment and percentage of common ownership in the condominium community (.64935%) were the same for each building. Hannon said the tax increases had caused a lot of the unsubdivided building owners a "great financial hardship."

The hearing officer then questioned the Board's representative at the hearing, Matt Panush. When asked why the County had two sets of assessments for the buildings, Panush explained:

"It seems that out of the 154 buildings, according to, you know -- there are six buildings that are assessed at this lower number. *** And that leaves us with 148 of the buildings being uniform. So for some reason -- And most of the time we sit here, and of the many condo units, there's one that seems to have been, you know, misunderstood or misclassified or misassessed. It would seem here that the majority of these buildings -- of these six-unit buildings -- are correct in their assessment and that we do not have a problem with the four. I cannot tell you why they have the $37,000. *** I'm not sure why the assessor chose to put the number at $37,000, but I do know that a majority -- 148 or of the 154 -- are uniform in this complex and I think, you know, that's -- that is what we are -- we

strongly stress here in this case."
Panush further explained that the Board believed 96% of the development was currently correct or assessed fairly, "and somehow 4 percent of this entire development is somehow incorrect." Panush specifically stressed, however, that the Board was not asking the PTAB to increase the assessments on the other 4% of the buildings to make the whole development uniform.

Crestwood's counsel responded to Panush's answer to the hearing officer's question by noting:

> "It is clearly not a mistake because they've continued it. There were assessment appeals filed advising the assessor of what we believed to be a lack of uniformity. The assessment relief was denied. *** This is ongoing. Every time a unit is sold the assessors reduce the assessment. This didn't just happen in 2004, it happened in 2005 as well. So every time a building was converted and sold as individual condos, the assessor's pattern and practice has been to reduce the assessments to this $37,000 level."

On August 12, 2009, the PTAB issued a modified decision finding a reduction in the assessment of the property at issue

was warranted based on the facts and exhibits presented. Specifically, the PTAB found the record was clear that "an inequity exists in the assessment process between the subject's subdivided and un-subdivided buildings." The PTAB noted the evidence demonstrated that although the buildings had the same physical characteristics and percentage of ownership in the common elements, the assessments of the buildings differed depending on whether or not the buildings had been subdivided into individual units. The PTAB found there was "no market data demonstrating that the buildings had differing overall values depending on whether or not the buildings had been subdivided." Without such market data, the PTAB found there was no basis for assessing the similar buildings differently. The PTAB found Crestwood had "adequately demonstrated that the subject was inequitably assessed by clear and convincing evidence and reductions are warranted for 2004 and 2005."

The Board appeals the PTAB's decision.

ANALYSIS

Our review of a PTAB decision is governed by the Administrative Review Law (735 ILCS 5/3-101 et seq. (West 2008)). 35 ILCS 200/16-195 (West 2008); Cook County Board of Review v. Property Tax Appeal Board, 395 Ill. App. 3d 776, 784, 918 N.E.2d 1174 (2009). Our scope of review extends to "all questions of

law and fact presented by the entire record." 735 ILCS 5/3-110 (West 2008). The PTAB's findings and conclusions on questions of fact "shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2008); Cook County Board of Review, 395 Ill. App. 3d at 784. We will not reweigh the evidence or substitute our judgment for that of the administrative agency. Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 210, 886 N.E.2d 1011 (2008). Accordingly, we will not reverse the PTAB's factual findings unless they are against the manifest weight of the evidence, meaning an opposite conclusion is clearly evident. Cook County Board of Review, 395 Ill. App. 3d at 784, citing Cinkus, 228 Ill. 2d at 210. The PTAB's determination on a question of law, however, is not binding on us, "rendering our review 'independent and not deferential.' " Cook County Board of Review, 395 Ill. App. 3d at 784, quoting Cinkus, 228 Ill. 2d at 210.

### I. Standard of Review

Initially, the parties disagree as to what standard of review should apply to the PTAB's decision on appeal.

Administrative review proceedings present three types of questions: those of fact, those of law, and mixed questions of fact and law. Cook County Board of Review, 395 Ill. App. 3d at 784, citing Cook County Republican Party v. Illinois State Board

of Elections, 232 Ill. 2d 231, 243, 902 N.E.2d 652 (2009). Factual determinations should only be reversed if they are against the manifest weight of the evidence. Republican Party, 232 Ill. 2d at 243. A de novo standard of review applies to an agency's determination of a question of law. Republican Party, 232 Ill. 2d at 243. Lastly, mixed questions of law and fact will only be reversed if the agency's decision is "clearly erroneous." Republican Party, 232 Ill. 2d at 243-44.

The Board contends the PTAB erred as a matter of law when it held Crestwood proved a violation of uniformity, necessitating a de novo review. The Board also contends the PTAB erred as a matter of law by setting assessments that are not equitable or supported by the evidence. The Board further contends, however, that the PTAB's findings were against the manifest weight of the evidence. Both the PTAB and Crestwood counter that no question of law is presented here, and, therefore, the proper standard of review is the manifest weight of the evidence standard. We agree with Crestwood and the PTAB.

A review of the record and briefs submitted by the Board indicates the PTAB did not address a question of law in reaching its decision. Instead, the PTAB's decision was based solely on a factual determination that the assessments at issue here lacked uniformity. Therefore, we review the PTAB's factual

determinations and ultimate conclusion using the manifest weight of the evidence standard. See Cook County Board of Review, 395 Ill. App. 3d at 785, citing Cinkus, 228 Ill. 2d at 210.

## II. PTAB's Decision

The Board contends the PTAB's findings were against the manifest weight of the evidence. Specifically, the Board contends the "uncontested and uncontroverted" evidence in the record established the parcels subject to the PTAB's reduction were uniformly assessed and valued at their fair market value.

Contrary to several of the superfluous arguments the Board raises on appeal, the only issue properly pending before the PTAB was Crestwood's claim that 141 unsubdivided buildings in the Crestwood development were assessed at $55,350 and 13 almost identical subdivided buildings were assessed at $37,628, in violation of the property tax uniformity provision in the Illinois Constitution.

Matt Panush, the Board's representative at the hearing, specifically stressed the Board was not asking the PTAB to increase the assessments on the other 4% of the buildings to make the whole development uniform. Instead, the Board's sole argument before the PTAB was that the 13 "misclassified or misassessed" buildings should not impact the other 141 buildings that were fairly assessed. Panush was unable to offer a reason

to explain the differences in the assessments.  To the extent the Board now attempts to raise other arguments to support the difference in assessments for the first time in this appeal, we find those arguments are waived and need not be considered here. See Cook County Board of Review, 395 Ill. App. 3d at 786 ("We recognize that arguments or objections that are not made during the course of the administrative hearing process but instead are raised for the first time on review are deemed waived").

The Illinois property tax scheme is grounded in article IX of the Illinois Constitution of 1970, which provides in pertinent part that real estate taxes "shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law."  Ill. Const. 1970, art, IX, §4(a); Walsh v. Property Tax Appeal Board, 181 Ill. 2d 228, 234, 692 N.E.2d 260 (1998). Because uniformity requires equality in the burden of taxation, taxing officials may not value the same kinds of properties within the same taxing boundary at different proportions of their true value.  Walsh, 181 Ill. 2d at 234, citing Kankakee County Board of Review v. Property Tax Appeal Board, 131 Ill. 2d 1, 20, 544 N.E.2d 762 (1989).  The constitutional provision does not call for mathematical equality, however.  Apex Motor Fuel Co. v. Barrett, 20 Ill. 2d 395, 401, 169 N.E.2d 769 (1960).  "The requirement is satisfied if the intent is evident to adjust the

burden with a reasonable degree of uniformity and if such is the effect of the statute in its general operation. A practical uniformity, rather than an absolute one, is the test." Apex Motor Fuel Co., 20 Ill. 2d at 401.

"The party objecting to an assessment on lack of uniformity grounds bears the burden of proving the disparity by clear and convincing evidence." Walsh, 181 Ill. 2d at 234; Cook County Board of Review v. Property Tax Appeal Board, 345 Ill. App. 3d 539, 543,, 803 N.E.2d 55 (2003), citing 86 Ill. Adm. Code §1910.63(b), amended at 24 Ill. Reg. 1233, 1247, eff. January 5, 2000 ("Under the burden of going forward, the contesting party must provide substantive, documentary evidence or legal argument sufficient to challenge the correctness of the assessment of the subject property"). The PTAB's rules provide:

> "Proof of unequal treatment in the
> assessment process should consist of
> documentation of the assessments for the
> assessment year in question for the subject
> property and of the suggested comparable
> properties, and documentation of the
> similarity, proximity and lack of
> distinguishing characteristics of the
> assessment comparables to the subject

property." 86 Ill. Adm. Code §1910.65(b)

(1996). See <u>Du Page County Board of Review</u>

<u>v. Property Tax Appeal Board</u>, 284 Ill. App.

3d 649, 654-55, 672 N.E.2d 1309 (1996).

"[T]he critical consideration is not the number of allegedly similar properties, but whether they are in fact 'comparable' to the subject property." <u>Du Page County Board of Review</u>, 284 Ill. App. 3d at 655, citing <u>Kankakee County Board of Review</u>, 131 Ill. 2d at 22.

Here, the PTAB found the evidence demonstrated that even though each of the buildings had the same physical characteristics and the same percentage of ownership in the common elements of the development, the assessments of the buildings differed depending on whether or not there had been a further subdivision of the buildings into individual units. Accordingly, the PTAB found Crestwood had adequately demonstrated the subject property was inequitably assessed by clear and convincing evidence. We find the record before us clearly supports the PTAB's finding of a lack of uniformity, and the Board has failed to establish the PTAB's ruling was against the manifest weight of the evidence.

Hannon, Crestwood's property manager, specifically testified at the hearing that there is no difference in the overall square

footage in the buildings or the units between the subdivided and unsubdivided buildings. Hannon also testified the monthly community assessment and percentage of ownership in the community's common elements were the same for each building, regardless of whether it had been divided or not.

Notwithstanding, the Board contends the PTAB erred in reassessing the higher-valued properties to be in line with the lower-valued assessments because "[t]he overwhelming majority of the buildings in this development were assessed uniformly." The Board made a similar argument before the PTAB hearing officer.

Although the County's representative, Matt Panush, could not explain why 4% of the buildings had been misclassified or misassessed, he argued to the PTAB that the assessor's mistake in assessing the 13 buildings at a lower assessment did not justify lowering the assessments on the 96% that had been assessed fairly. Panush admitted in his opening comments to the hearing officer that all 154 buildings were "pretty much identical." Panush offered absolutely no explanation during the hearing for why the alleged "mistake" in assessing the subdivided buildings at a lower rate had occurred. Panush argued the assessments imposed on the 142 units were justified under the market value of the buildings. Panush also stressed the Board was not seeking to reassess the 13 subdivided buildings at the higher rate.

Crestwood's counsel responded to Panush's argument by noting the lower assessments for the subdivided buildings were still ongoing and clearly not a mistake. Crestwood noted the individual units when totaled up sold for an average of $697,000 per subdivided building, which was more than the buildings sold for as individual buildings. Crestwood argued that, nevertheless, the assessor saw fit to actually reduce the assessment on the subdivided individual units rather than increase it. Crestwood also noted the assessors reduced the assessment every time a building was sold and converted into individual condos, even after the Board was made aware of the lack of uniformity between the assessments.

Based on the totality of the evidence presented, we find Crestwood proved by clear and convincing evidence a lack of uniformity between the assessments imposed on the almost identical buildings. Accordingly, we cannot say PTAB's findings in this case were against the manifest weight of the evidence.

CONCLUSION

We affirm the PTAB's decision.

Affirmed.

TOOMIN, P.J., and LAVIN, J., concur.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| | |
|---|---|
| Please use following form: | THE COOK COUNTY BOARD OF REVIEW,<br><br>                        Petitioner, |
| Complete<br>  TITLE<br> of Case |               v.<br><br>THE PROPERTY TAX APPEAL BOARD, an Administrator Agency, and CRESTWOOD CONDOMINIUM ASSOCIATION, Taxpayer,<br><br>                    Respondents. |
| Docket Nos.<br><br>  COURT<br><br> Opinion<br> Filed | No. 1-08-2060<br><br>Appellate Court of Illinois<br>First District, 5th Division<br><br>July 30, 2010<br><br>(Give month, day and year) |
| JUSTICES | JUSTICE HOWSE delivered the opinion of the court:<br><br>TOOMIN, P.J., and LAVIN, J., concur. |
| APPEAL from the Circuit Court of Cook County; the Hon._____, Judge Presiding. | Petition for Review of an Order of the Illinois Property Tax Appeal Board. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith, of Chicago.<br><br><br><br>Joseph Brown, of Counsel).<br><br><br><br><br>Also add attorneys for third-party appellants and/or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>For Petitioner, Anita Alvarez, State's Attorney of Cook County, of Chicago. (Patrick T. Driscoll, Jr., Deputy State's Attorney, Chief, Civil Actions Bureau; Benjamin R. Bilton and Tatia C. Gibbons, Assistant State's Attorneys, of Counsel.)<br><br>For Respondent - Crestwood Condominium Association, Donald T. Rubin, Rubin & Norris, LLC, of Chicago.<br><br>For Respondent - Property Tax Appeal Board, Lisa Madigan, Attorney General, Michael A. Scodro, Solicitor General, and Evan Siegel, Assistant Attorney General, of Chicago.<br><br><br>(USE REVERSE SIDE IF NEEDED) |