2023 IL App (2d) 210150-U
No. 2-21-0150
Order filed March 6, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RUNJUN WANG, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-MR-661 |
| | ) | |
| ILLINOIS PROPERTY TAX APPEAL | ) | |
| BOARD, LAKE COUNTY BOARD OF | ) | |
| REVIEW, and LAKE COUNTY | ) | |
| TREASURER, | ) | Honorable |
| | ) | Joseph V. Salvi, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*: The Illinois Property Tax Appeal Board's decision to reduce the total assessed value of the subject property by $20,039 was not against the manifest weight of the evidence.

¶ 2                     I. INTRODUCTION

¶ 3   Plaintiff, Runjun Wang, appeals *pro se* from the judgment of the circuit court of Lake County, which affirmed on administrative review a decision of defendant, the Illinois Property Tax Appeal Board (PTAB). For the 2016 tax year, the PTAB reduced the total assessed value of the

subject property (which includes plaintiff's residence) by $20,039. Plaintiff argues that the assessed value of the subject property should have been reduced by $33,080. For the reasons set forth below, we affirm.[1]

¶ 4                                    II. BACKGROUND

¶ 5      We set forth the following background information to facilitate an understanding of this appeal. The subject property is located at 5725 Hampton Drive, Long Grove, Vernon Township, Lake County, Illinois. Plaintiff purchased the subject property in 2009 for $490,000. The subject property is a 44,867 square-foot lot which includes a two-story, single-family dwelling of brick exterior construction built in 1987. The dwelling contains 3692 square feet of living space with two full bathrooms, two half bathrooms, a partially finished basement, central air conditioning, a fireplace, and an attached garage of 792 square feet. In 2016, the subject property's land value was assessed at $18,569 and its improvement value was assessed at $174,680, for a total assessed value of $193,249. Plaintiff appealed to defendant, the Lake County Board of Review (Board), seeking a reduction of her assessment for the 2016 tax year. Following a hearing, the Board maintained the assessed value of the land at $18,569, but reduced the assessed value of the improvement to $168,080. Thus, the Board fixed the total assessed value of the subject property at $186,649, a reduction of $6600. This resulted in an assessment per square foot of living area of $45.53 ($168,080/3692).

---

[1] Plaintiff filed a "Motion to Sanction and Strike" appellees' briefs. We took the motion with the case. In her motion, plaintiff claims that appellees' briefs are inaccurate and incomplete in several respects. Plaintiff argues that we should therefore strike portions of appellees' briefs and impose sanctions against them. Having reviewed appellees' briefs, we deny plaintiff's motion.

¶ 6                                   A. PTAB Proceedings

¶ 7     Plaintiff appealed the Board's final assessment to the PTAB. Plaintiff did not contest the Board's finding of the subject property's land assessment. However, she requested a reduction of $33,080 (from $168,080 to $135,000) with respect to the Board's finding of the subject property's improvement assessment. Given the requested reduction, the assessment per square foot of living area would be $36.57 ($135,000/3692). Plaintiff based her appeal on evidence of "comparable sales," "assessment equity," and a "contention of law." In support of her appeal, plaintiff submitted information on three comparable properties. Two of those properties are located in the same neighborhood code as the subject property (as defined by the local assessor) and all three are within four blocks of the subject property. Plaintiff's three comparable properties are on lots ranging in size from 20,078 to 45,738 square feet. The comparable properties are improved with two-story, single-family dwellings of brick or wood-siding exterior construction. The dwellings have living areas ranging from 3530 to 4250 square feet, and are from 24 to 32 years old. Features of the comparable properties include basements (two of which have finished areas), central air conditioning, one or two fireplaces, and garages ranging in size from 703 to 851 square feet. The comparable properties were sold between March 2014 and July 2016 for prices ranging from $470,000 to $580,000, or $129.83 to $139.86 per square foot of living area. The comparable properties have improvement assessments ranging from $135,225 to $156,198, or $36.75 to $41.08 per square foot of living area.[2] In addition to the information on the comparable properties, plaintiff

_____

[2] We calculated the assessment per square foot of living area by dividing the improvement assessment by the square feet of living area. In its final administrative decision, the PTAB calculated that the assessment per square foot of living area for plaintiff's three comparable

submitted photographs of portions of the subject property which, she asserted, needed repair, photographs of the interiors of the comparable properties, and a brief contending an error in the subject property's assessment in 2011.

¶ 8    In response, the Board submitted a document entitled "Board of Review—Notes on Appeal," disclosing the total assessment of the subject property at $186,649. The Board also submitted information on four equity comparable properties located within 0.6 miles of the subject property and within the same neighborhood code as the subject property. The four equity comparable properties are on lots ranging in size from 43,560 to 53,579 square feet. The four equity comparable properties are improved with two-story, single-family dwellings of brick or wood-siding exterior construction. The dwellings have living areas ranging from 3630 to 4250 square feet and were built in 1986 or 1987. The features of the four equity comparable properties include basements (two with finished areas), central air conditioning, one to three fireplaces, and garages ranging in size from 638 to 792 square feet of building area. The four equity comparable properties have improvement assessments ranging from $155,716 to $175,451, or from $42.29 to $47.78 per square foot of living area.

¶ 9    Additionally, the Board submitted information on four comparable property sales located within 0.232 miles of the subject property and within the same neighborhood code as the subject property. The sales comparable properties are on lots ranging in size from 43,560 to 45,738 square feet and are improved with two-story, single-family dwellings of brick or wood-siding exterior construction. The dwellings range in size from 3460 to 3699 square feet of living area and were

---

properties ranged from $36.15 to $38.41 per square foot. Based on the evidence of record, it is unclear how the PTAB arrived at those figures.

constructed between 1986 and 1990. Features of the four sales comparable properties include basements (three with finished areas), central air conditioning, one to three fireplaces, and garages ranging in size from 750 to 932 square feet of building area. The four sales comparable properties have improvement assessments ranging from $151,620 to $175,078, or from $43.14 to $49.51 per square foot of living area. The four sales comparable properties were sold between August 2014 and March 2017 for prices ranging from $625,000 to $687,500 or between $168.96 and $195.53 per square foot of living area.

¶ 10    Plaintiff submitted rebuttal evidence contesting the similarities of the Board's comparable properties. In addition, plaintiff submitted information on additional properties not previously submitted.

¶ 11    A hearing on plaintiff's appeal was held on April 8, 2019, before Sasha Jonic, an administrative law judge (ALJ) for the PTAB. Plaintiff appeared on her own behalf at the hearing with two witnesses. John Paslawsky appeared on behalf of the Board.

¶ 12    At the hearing, plaintiff argued that the subject property is inferior to the comparable properties due to its state of disrepair as well as the fact that it is situated in close proximity to high-voltage electrical power lines. Plaintiff also complained that there was an erroneous entry on the subject property's record card. The entry in question reads "2011 add F/B, 1378 SF 1/2 bath, and A/C."[3]  Plaintiff stated, however, that she did not "add" a finished basement, a half bath, or air conditioning to her residence in 2011. Rather, these features existed when she purchased the

_____

[3] The subject property's record card has several other notations, including one providing that in 2016, the size of plaintiff's finished basement was changed from 1378 square feet to 919 square feet.

subject property in 2009. Plaintiff contended that after the alleged erroneous entry on the subject property's record card, her overall taxes increased by approximately 25%, which has carried forward to the present time and caused her taxes to increase from 2011 through 2016. Plaintiff stated that she did not discover the "error" on the subject property's record card until 2016 and she did not appeal any other year's assessment prior to 2016. Based on this evidence, plaintiff requested a reduction in the subject property's total assessment by 25% as well as a "refund" of the extra taxes she paid in prior years.

¶ 13    Paslawsky testified that the only error on the subject property's record card was the size of the finished basement, which was duly corrected in 2016. Paslawsky also testified that the notation on the subject property's record card in 2011 regarding the finished basement, half bath, and air conditioning was made after the assessor discovered that these features were on the multiple listing service (MLS) sheet for the subject property but were not already recorded on the subject property's record card. Finally, Paslawsky testified that the increase in the subject property's overall taxes may be due to many other factors unrelated to the aforementioned entry on the subject property's record card.

¶ 14    Plaintiff attempted to introduce new evidence during the hearing, to which Paslawsky objected. During the hearing, Paslawsky, on behalf of the Board, offered to reduce the subject property's total assessment to $166,610, and prepared a stipulation reflecting said reduction. Plaintiff rejected the offer.

¶ 15                    B. PTAB Decision

¶ 16    On May 21, 2019, the PTAB issued a final administrative decision in plaintiff's case. At the outset, the Board noted that plaintiff submitted rebuttal evidence (1) contesting the similarities of the Board's comparable properties to the subject property and (2) listing additional properties

not previously submitted. The PTAB concluded that its rules precluded plaintiff from submitting new evidence on rebuttal. See 86 Ill. Admin. Code § 1910.66(c) (2019). Additionally, the PTAB observed that at the hearing before the ALJ, plaintiff attempted to introduce evidentiary documents which were not included with her original submission, to which the Board objected. The PTAB sustained the Board's objection, noting that its rules preclude a party to an appeal from introducing new evidence at a hearing. See 86 Ill. Admin. Code § 1910.67(k)(1) (2017).

¶ 17    Turning to the merits, the PTAB first addressed plaintiff's claim of an assessment inequity. The PTAB noted that the parties submitted a total of seven suggested comparable properties for consideration. The PTAB noted that the comparable properties had varying degrees of similarity to the subject property. The PTAB found that plaintiff's comparable properties one and two (the properties that were located in the same neighborhood code as the subject property) and the Board's four equity comparable properties constituted the best evidence of assessment equity because they are most similar to the subject property in location, dwelling size, lot size, design, and features. The PTAB noted that the comparable properties have improvement assessments ranging from $135,225 to $175,451, or from $37.35 to $47.78 per square foot of living area. The PTAB observed that the subject property's improvement assessment of $168,080, or $45.53 per square foot of living area, was at the higher end of the range established by the most similar equity comparable properties of record. After considering the error regarding the square footage of the subject property's finished basement and after adjustments for differences between the subject property and the equity comparable properties, the PTAB concluded that a reduction in the subject property's assessment was justified due to an assessment inequity. Accordingly, the PTAB reduced the improvement assessment on the subject property to $148,041, but maintained the assessed

value of the land at $18,569. This resulted in a total assessed value of the subject property of $166,610, a reduction of $20,039 from the total assessed value of $186,649 fixed by the Board.

¶ 18    The PTAB also addressed plaintiff's contention that the subject property was overvalued based on comparable sales. The PTAB found that some of the sales comparable properties submitted by the parties were not reflective of market value because (1) the sales dates were too distant in time to the subject property's assessment date of January 1, 2016, and (2) features of the subject property and those of some of the sales comparable properties were dissimilar. The PTAB determined that the best evidence of market value was plaintiff's comparable number two and the Board's sales comparable property numbers two and four. The PTAB found that these three properties are the most similar to the subject property in location, lot size, dwelling size, age, design, and features. Those three properties sold between July 2015 and September 2016 for prices ranging from $493,700 to $687,500, or $139.86 to $195.53 per square foot of living area. The PTAB concluded that the subject property's reduced total assessed value of $166,610, which, according to the PTAB, reflected an estimated market value of approximately $499,880, or $136.73 per square foot of living area, is justified considering its inferior condition when compared to the most similar sales comparable properties and being in close proximity to high-voltage power lines.[4] After considering the assessment reduction granted to the subject property based on equity considerations, the PTAB found no further reduction in the subject property's assessment was warranted based on comparable sales.

---

[4] Based on the PTAB's estimate of the market value of the subject property, we calculate the market value per square foot of living area as $135.40 ($499,880/3692).

¶ 19    Lastly, the PTAB noted that its jurisdiction is limited to accepting an appeal from a decision of a county board of review pertaining to the assessment of real property. Thus, it had no jurisdiction over the amount of property taxes extended from 2011 through 2015. 86 Ill. Admin. Code § 1910.10(f) (2019) (providing that the PTAB is without jurisdiction to determine the tax rate, the amount of a tax bill, or the exemption of real property from taxation).

¶ 20                          C. Trial Court Proceedings

¶ 21    Plaintiff filed a complaint for review of the PTAB's final administrative decision in the circuit court of Lake County. Subsequent to filing her complaint, plaintiff filed numerous motions in the trial court. In an order dated September 30, 2020, the trial court found that plaintiff's prior motions were not well grounded in fact or existing law. The court therefore enjoined plaintiff or anyone acting on her behalf from submitting further filings in the case without first obtaining leave of court. Additionally, while plaintiff's case was pending in the trial court, she filed two appeals to this court, both of which were dismissed for lack of appellate jurisdiction. *Wang v. Illinois Property Tax Appeal Board,* No. 2-20-0747 (2021); *Wang v. Illinois Property Tax Appeal Board,* No. 2-20-0121 (2020). Thereafter, the PTAB, the Board, and defendant Lake County Treasurer (Treasurer) filed briefs in response to plaintiff's complaint for administrative review. On January 19, 2021, the trial court entered an order denying plaintiff's complaint, concluding that the final administrative decision of the PTAB was not contrary to the manifest weight of the evidence or contrary to law. In the same order, the trial court reiterated that plaintiff continuously filed motions that had no basis in law or fact and that she continuously attempted to violate the court order requiring her to seek leave of court for any additional filings. Plaintiff subsequently filed a notice of appeal to this court, which, as amended, listed 16 separate circuit court orders she was appealing.

¶ 22                          III. ANALYSIS

¶ 23    At the outset, we note that plaintiff is self represented. It is well established that "*pro se* litigants are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys." *JP Morgan Chase Bank, National Associates v. Jones*, 2019 IL App (1st) 181909, ¶ 29; *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067 (2009). Among these rules and procedures are those contained in Illinois Supreme Court Rule 341, which sets forth the form and content requirements of appellate briefs. Ill. S. Ct. R. 341 (eff. Oct. 1, 2020). Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) requires an appellant to provide a statement of facts "which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate references to the pages of the record on appeal." The statement of facts in plaintiff's opening brief fails to provide this court with an understanding of the case. It consists largely of rambling statements that lack clarity. It is also riddled with unnecessary argument and comment. We further observe that Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires an appellant to provide argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities *** relied on." In her appellate brief, plaintiff purports to raise 20 "issues." However, it is difficult to discern the precise nature of many of the contentions of error plaintiff purports to raise. This is principally because plaintiff's arguments are disorganized and consist largely of stream-of-consciousness writings that are confusing, vague, repetitive, conclusory, and often lack citation to relevant authority.

¶ 24    We are mindful of the challenges plaintiff faces in representing herself on appeal. Nevertheless, compliance with Rule 341 is not an inconsequential matter. The rules of our supreme court "are not aspirational. They are not suggestions. They have the force of law, and the

presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). As a reviewing court, we are entitled to have the issues clearly defined with pertinent authority cited. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 15. An appellant cannot expect a reviewing court to develop arguments and research issues on his or her behalf. See *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 20. Where an appellant's brief fails to comply with the supreme court rules, a reviewing court has the inherent authority to strike the brief and dismiss the appeal. *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005). That said, we have the benefit of a cogent appellee brief from the PTAB and another from the Board and the Treasurer. Based on appellees' briefs, we have been provided with the facts necessary for an understanding of the case and can discern, generally, plaintiff's assignments of error. Thus, despite the deficiencies in plaintiff's brief, we will address the merits of the PTAB's May 21, 2019, final administrative decision. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001) (opting to address merits despite appellant's failure to comply with the supreme court rules).

¶ 25                                          A. Standard of Review

¶ 26     Final administrative decisions of the PTAB are subject to review under the provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2018)). 35 ILCS 200/16-195 (West 2018). In an action for administrative review, it is the decision of the agency, rather than the trial court, that we review. *Peacock v. Illinois Property Tax Appeal Board*, 339 Ill. App. 3d 1060, 1068 (2003); *Brazas v. Property Tax Appeal Board*, 339 Ill. App. 3d 978, 981 (2003). As such, we are limited to considering the evidence submitted to the administrative agency and may not consider evidence submitted to the trial court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006); *Lipscomb v. Housing Authority of County of Cook*, 2015 IL App (1st)

142793, ¶ 11. Under the Administrative Review Law, judicial review of agency decisions extends to all questions of law and fact presented by the record. 735 ILCS 5/3-110 (West 2018); *Du Page County Board of Review v. Property Tax Appeal Board*, 284 Ill. App. 3d 649, 652 (1996). The applicable standard of review depends on whether the administrative decision presents a question of fact, a question of law, or a mixed question of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008); *Wortham v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 131735, ¶ 13.

¶ 27 An administrative agency's factual findings are deemed *prima facie* true and correct. *Du Page County Board of Review*, 284 Ill. App. 3d at 652-53. Assigning weight to evidence and assessing the credibility of witnesses is primarily for the agency hearing the matter. *King v. Justice Party*, 284 Ill. App. 3d 886, 888 (1996). Therefore, in considering an agency's factual findings, a reviewing court does not reweigh the evidence or substitute its judgment for that of the agency. *Cinkus*, 228 Ill. 2d at 210. The reviewing court is limited to considering whether the agency's factual findings are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210; *Du Page County Board of Review*, 284 Ill. App. 3d at 652-53. A finding of fact is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Cook County Board of Review v. Property Tax Appeal Board*, 403 Ill. App. 3d 139, 143 (2010); *Roti v. LTD Commodities*, 355 Ill. App. 3d 1039, 1051 (2005).

¶ 28 An agency's conclusions on questions of law, however, are not binding on a reviewing court. *Cinkus*, 228 Ill. 2d at 210. Consequently, review of legal issues is *de novo*. *Du Page County Board of Review*, 284 Ill. App. 3d at 653. A mixed question of fact and law presents a situation in which the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or, in other words, whether the rule of law as applied to the

established facts is or is not violated. *Cinkus*, 228 Ill. 2d at 211. In addressing a mixed question of fact and law, a reviewing court considers whether the agency's decision is clearly erroneous. *Cinkus*, 228 Ill. 2d at 210. A decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Cinkus*, 228 Ill. 2d at 210.

¶ 29                                B. The PTAB Decision

¶ 30    As noted earlier, plaintiff purports to raise 20 "issues" on appeal. Many of plaintiff's assignments of error concern rulings made by the trial court. As noted earlier, however, in an action for administrative review, it is the decision of the agency, rather than the trial court, that we review. *Peacock*, 339 Ill. App. 3d at 1068; *Brazas*, 339 Ill. App. 3d at 981.

¶ 31    With respect to the PTAB's final administrative decision, plaintiff contends that the "root cause" of the "erroneous increase" in the assessment of the subject property is the "false upgrade notes added by [the] assessor in 2011." According to plaintiff, this alleged error continued through 2016, thereby causing her property taxes to rise sharply. The PTAB's finding of the assessed value of a particular property is a question of fact. *West Loop Associates, LLC v. Property Tax Appeal Board*, 2017 IL App (1st) 151998, ¶ 59; *Kraft Foods, Inc. v. Illinois Property Tax Appeal Board*, 2013 IL App (2d) 121031, ¶ 51; *Du Page County Board of Review*, 284 Ill. App. 3d at 653-54. Hence, the PTAB's decision will not be disturbed unless it is against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210; *Du Page County Board of Review*, 284 Ill. App. 3d at 652-53. As noted above, a finding of fact is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Cook County Board of Review*, 403 Ill. App. 3d at 143; *Roti*, 355 Ill. App. 3d at 1051.

¶ 32    Applying this deferential standard, we cannot conclude that the PTAB's finding of the assessed value of the subject property was against the manifest weight of the evidence. In this

regard, we observe that both plaintiff and the Board presented evidence of comparable properties to support their respective property assessment claims. In addition, both parties appeared before the PTAB's ALJ and argued their respective positions. As such, the PTAB was required to assess the credibility of the witnesses and weigh the evidence. *King*, 284 Ill. App. 3d at 888. In doing so, the PTAB noted that the parties submitted a total of seven suggested equity comparable properties for consideration with varying degrees of similarity to the subject property. The PTAB found that two of plaintiff's comparable properties and the Board's four equity comparable properties constituted the best evidence of assessment equity because they were the most similar to the subject property in location, dwelling size, lot size, design, and features. The PTAB then compared the improvement assessments on the six properties and observed that the subject property's improvement assessment of $168,080, or $45.53 per square foot of living area, was at the higher end of the range established by the most similar equity comparable properties of record. After considering the error regarding the square footage of the subject property's finished basement and adjusting for differences between the subject property and the comparable properties, the PTAB concluded that a reduction in the subject property's assessment was justified due to an assessment inequity. To this end, the PTAB reduced the improvement assessment on the subject property to $148,041, or $40.10 per square foot of living area ($148,041/3692). The PTAB maintained the assessed value of the land at $18,659. The PTAB's changes resulted in a total assessed value of the subject property of $166,610, a reduction of $20,039 from the total assessed value fixed by the Board. As a result of the improvement assessment fixed by the PTAB, the subject property went from being at the higher end of the range established by the most similar comparable properties to being at the lower end of the range. Because the PTAB articulated rational reasons for making its decision, we cannot say that a conclusion opposite that of the PTAB is clearly apparent.

¶ 33   The PTAB also addressed, on alternative grounds, whether plaintiff's property was overvalued. The PTAB determined that the best evidence of market value was a mix of properties consisting of one of plaintiff's comparable properties and two of the Board's sales comparable properties. The PTAB found that these three properties were the most similar to the subject property in location, lot size, dwelling size, age, design, and features. Those three properties sold between July 2015 and September 2016 for prices ranging from $493,700 to $687,500, or $139.86 to $195.53 per square foot of living area. The PTAB concluded that the subject property's reduced total assessment of $166,610, which, according to the PTAB, reflected an estimated market value of approximately $499,880, or $136.73 per square foot of living area, was justified considering its inferior condition when compared to the most similar sales comparable properties and being in close proximity to high-voltage power lines.[5] After considering the assessment reduction granted to the subject property based on equity considerations, the PTAB found no further reduction in the subject property's assessment was warranted based on comparable sales. Again, given that the PTAB set forth rational reasons for making its decision, we cannot say that a conclusion opposite that of the PTAB is clearly apparent.

¶ 34   As noted above, the gravamen of plaintiff's argument below was that there was an "error" in the subject property's record card in 2011 and that this "error" continued through 2016, which caused an increase in plaintiff's property taxes. The note in question reads "2011 add F/B, 1378 SF 1/2 bath, and A/C." At the hearing before the PTAB, plaintiff interpreted the note to mean that,

---

[5] As noted earlier, based on the PTAB's estimate of the market value of the subject property, we calculate the market value per square foot of living area to be $135.40 ($499,880/3692).

in 2011, *she* finished the basement of her home, added a half bath, and installed air conditioning. Paslawsky contested plaintiff's interpretation. He testified that the note was made after the assessor discovered that these features were listed on the MLS sheet for the subject property but were not already included on the subject property's record card. On appeal, plaintiff continues to insist that she is entitled to a further reduction in the assessed value of the subject property because the assessor "added" to the property record card "untrue information to increase" her tax assessment by "25.24% *** for *** 2011," which thereby affected the annual amount she paid in taxes. She further asserts that she established at the hearing before the PTAB that she "never added" the features listed in the notation. However, nothing in the record supports plaintiff's interpretation that the notation meant that *she* added the finished basement, half bath, and air conditioning to the subject property. Furthermore, we find no indication in the record to establish that the PTAB construed the notation to mean that plaintiff herself added a finished basement, a half bath, and air conditioning to the subject property in 2011. Indeed, at the hearing before the PTAB, the ALJ stated that he was not reading the notation to mean that plaintiff added the additional features. Rather, the ALJ interpreted the notation to mean that the assessor "didn't have [those features] on the record before that, but [he or she] found out about it." Quite simply, plaintiff's claim that the 2011 notation on the subject property's record card constituted an "error" finds no support in the record. As such, she is not entitled to relief on this basis.

¶ 35                                     IV. CONCLUSION

¶ 36    For the reasons set forth above, we affirm the judgment of the circuit court of Lake County, which affirmed the final administrative order of the PTAB.

¶ 37    Affirmed.