2025 IL App (1st) 221922-U
No. 1-22-1922

FIRST DIVISION
June 30, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JACK CARROLL & WOODFIELD CORPORATE CENTER SPE, LLC, | ) ) ) | Petition for Review of Order of the Illinois Property Tax Appeal Board |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS PROPERTY TAX APPEAL BOARD; COOK COUNTY BOARD OF REVIEW; PALATINE TOWNSHIP HIGH SCHOOL DISTRICT #211; and SCHAUMBURG CONSOLIDATED SCHOOL DISTRICT #54, | ) ) ) ) ) ) | Property Tax Appeal Board Docket No. 17-44089.001-C-3 |
| Respondents-Appellees. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

*Held*:     The decision of the Illinois Property Tax Appeal Board is affirmed because (1) it relied on admissible evidence and (2) its findings pertaining to the market value of the subject property were not against the manifest weight of the evidence.

¶ 1     Petitioner Jack Carroll & Woodfield Corporate Center SPE, LLC (petitioner), the owner of

certain commercial real estate (the subject property), appeals from a decision of the Illinois

Property Tax Appeal Board (PTAB) that found the fair market value of the subject property for the tax year 2017 was $37 million. In doing so, the PTAB found the best evidence of the property's 2017 value was an expert appraisal of the property's value as of 2016 (the Dost appraisal) which had also been submitted in connection with petitioner's appeal from the 2016 tax year assessment. Petitioner argues that the PTAB erred in relying on the Dost appraisal because it was inadmissible for purposes of the 2017 tax year assessment. Petitioner also claims that PTAB's reliance on the Dost appraisal was prejudicial and rendered the decision against the manifest weight of the evidence. For the following reasons, we reject petitioner's contentions and affirm.

¶ 2                                     BACKGROUND

¶ 3        This is the second of two appeals challenging the PTAB's decisions regarding the value of the same subject property for tax years 2016 and 2017.[1] Although the instant appeal concerns only the PTAB's decision concerning tax year 2017, it followed an administrative hearing at which the parties also presented evidence regarding petitioner's challenge to the 2016 tax year valuation for the same property.

¶ 4        The subject property is located in Schaumburg and is commonly known as Woodfield Corporate Center. It includes two office buildings that are 13 and 14 stories tall, a four-story parking deck, and surface parking for 2,092 cars. It has a net rentable building area of 521,362 square feet and a gross building area of 547,137 square feet.

¶ 5        In 2016, the subject property was purchased by Woodfield Corporate Center SPE, LLC for $32 million. Under the Cook County Real Property Assessment Classification, the subject property is a class 5 property. Accordingly, it is assessed at 25% of the fair market value.

---

[1]       Petitioner's appeal from the PTAB's assessment of the value of the property for tax year 2016 is appeal no. 1-22-1698, which will be decided in a separate order.

¶ 6          2016 Assessment and Petitioner's Corresponding Appeal to the PTAB

¶ 7          For the 2016 tax year, the County Assessor valued the subject property at $10,501,477. The Cook County Board of Review (Board of Review) reduced the assessment to $9,926,880, corresponding to a fair market value of $39,707,520. The petitioner filed an appeal with the PTAB (no. 16-40766), requesting a reduction of the assessment to $6,500,000, corresponding to a fair market value of $26 million. In support, petitioner submitted an appraisal by Frank C. Urban & Co. that appraised the subject property as having a fee simple market value of $26 million as of January 1, 2016.

¶ 8          The Board of Review did not present any appraisals to PTAB, but it submitted its "Board of Review Notes on Appeal" as support for its assessment.

¶ 9          In April 2019, Palatine Township High School District # 211 and Schaumburg Community Consolidated School District #54 (together, the intervenors) intervened in the petitioner's appeal to the PTAB. The intervenors, who were represented by the same counsel, submitted an appraisal by Eric Dost of the Dost Valuation Group (Dost appraisal) that concluded the market value of the subject property was $37,000,000 as of January 1, 2016.

¶ 10         In rebuttal, petitioner submitted an appraisal review by John VanSanten of Stout Risius Ross LLC that was highly critical of the Dost appraisal. According to VanSanten, there were "several critical errors" in the Dost appraisal, which relied on "inappropriate market data and assumptions."

¶ 11         2017 Assessment and Petitioner's Corresponding Appeal to PTAB

¶ 12         For the 2017 tax year, the County Assessor valued the subject property at $11,229,904, which corresponds to a fair market value of $44,919,616. After the Board of Review declined to change that valuation, petitioner filed another appeal with the PTAB (no. 17-44089) asserting an

overvaluation. In support, petitioner submitted an appraisal by Urban that appraised the subject property as having a fee simple market value of $27,150,000 as of January 1, 2017.

¶ 13        In November 2019, the intervenors intervened in the petitioner's appeal of the 2017 assessment. Significant to this appeal, the intervenors submitted the same appraisal from Dost concluding the market value of the subject property was $37,000,000 as of January 1, 2016. That is, intervenors did not submit a separate appraisal opining as to the property's value in 2017. Instead, they relied on the Dost appraisal as evidence for both the 2016 and 2017 tax years.

¶ 14        The Board of Review did not present any appraisals to PTAB with respect to the 2017 tax year. Instead, it submitted "Notes on Appeal" which identified five comparable sales of commercial properties in Arlington Heights, Rolling Meadows and Schaumburg. Those sales ranged between $850,000 between $2,795,000, and between $142.74 to $227.16 per square foot.

¶ 15        Notably, whereas petitioner submitted VanSanten's report criticizing the Dost appraisal as rebuttal evidence for it appeal from the 2016 assessment, petitioner did not submit any rebuttal evidence for its challenge to the 2017 assessment.

¶ 16                            August 2021 PTAB Hearing

¶ 17        At the parties' request, the PTAB consolidated petitioner's appeals challenging the 2016 and 2017 tax year assessments. The Administrative Law Judge (ALJ) agreed to hold a single hearing addressing the appeals for both tax years, although it would issue separate decisions for each year. The instant appeal concerns only the 2017 tax year assessment. However, we reference testimony pertaining to the 2016 assessment, to the extent it helps clarify the issues in this appeal.

¶ 18                            Petitioner's Expert Frank Urban

¶ 19        Petitioner elicited testimony from Frank Urban as an expert in real estate evaluation for tax purposes. During his testimony, Urban referred to both his 2016 appraisal that evaluated the

property as having a $26 million market value, as well as his 2017 appraisal finding the property had a $27,150,000 value.

¶ 20    Urban testified that he assessed the market value of the property's fee simple interest for ad valorem assessment purposes. He noted that the subject property sold in August 2016 for $32 million. He said this was indicative "of the lease[d] fee property rights that transferred in the transaction."

¶ 21    Urban testified to why he believed the property was worth less than the $32 million sale price. Based on his conversations with the owners, he believed were "three primary areas where the sale should [be] adjusted as an indicator of value." First, he suggested the sale price value was too high, citing concerns as to whether AC Nielsen, a tenant who occupied roughly 35 percent of the building, would be staying past its current lease. Urban testified there were reports that AC Nielsen planned to relocate, although there were "40 months remaining on their lease term" at the time of the 2016 sale. Urban testified that the buyers in 2016 "did not believe definitively that [AC] Nielsen was vacating" and hoped for a lease extension.

¶ 22    Urban testified that AC Nielsen was paying $20.50 per square foot in rent, whereas other tenants paid significantly less, about "9 ½ to $12 to $13 a square foot." Thus, the "buyers knew they were going to be getting this above-market income stream" under the AC Nielsen lease for 40 months after the sale.

¶ 23    Urban also opined that the 2016 sale price was higher than its true market value because the buyer saved "roughly $4 million" in leasing commissions and tenant improvement allowances that were paid by the seller in 2015. Urban stated: "Those items do not contribute to the market value of the real estate in the fee simple title. On a leased fee basis they do but in fee simple title the leasing commissions are spent, they're gone." Similarly, he believed that tenant improvement

costs "to build out a space to a particular tenant's needs does not end up creating more value to that particular space in the marketplace" since other tenants might not want the space built out the same way. For these reasons, he opined that a "significant downward adjustment from the [$32 million] sale price is appropriate" to determine the property's fee simple market value.

¶ 24     Urban testified that his appraisals used the "cost approach, the income capitalization approach, and the sales comparison approach" to estimate the fair market value of the property in 2016 and 2017.

¶ 25     For his income capitalization approach, Urban reviewed information about the property's tenants and leases, including the length of the leases, how much was spent on tenant improvements, and how much "free rent" was given, *i.e.*, rent abatement. Urban testified that typically tenants receive "one month of free rent for every 12 to 15 months or so." He opined that such rent abatement requires making downward adjustments in estimating the property's fair market rent.

¶ 26     Urban analyzed the existing leases at the property and "comparable properties" in the area to determine revenue generated by the property. Urban also considered the subject property's historical occupancy and "looked at other properties and publications to determine market vacancy"; he used that data to assess the subject property's "effective gross income." Urban deducted certain expenses to calculate a "net operating income" which is "capitalized using a rate."

¶ 27     Urban testified that only 497,182 square feet of the subject property was rentable. The remainder of the property was used for amenities, storage and common areas. Urban determined that the rental value was $24 per square foot as of 2017.

¶ 28     In his income analysis, Urban applied an occupancy rate of 82 percent (*i.e.*, an 18 percent vacancy rate) after considering "historical levels for the northwest suburban market", the "quality

of the subject buildings," and other factors. Using this vacancy level, Urban calculated the subject property's effective gross income.

¶ 29       Urban's 2017 appraisal reflects that he determined an effective gross income of $9,247,624. He deducted total operating expenses of $3,347,636; he also deducted $1,850,591 for leasing commissions, tenant improvements, and "replacements reserve." Thus, he calculated a net operating income of $4,051,397.

¶ 30       Urban explained that net operating income is capitalized to estimate market value. Urban testified that he considered a number of factors to determine a capitalization rate. He determined a capitalization rate of "8.0 percent before the tax load."

¶ 31       For 2017, Urban stated the loaded capitalization rate was 14.9%. Dividing the net operating income by this rate resulted in a fair market value of $27,190,000 for tax year 2017 under the income approach.

¶ 32       Urban opined that the income approach "merits the greatest weight in the analysis" of overall market value, since this was an "income property."

¶ 33       Separately from the income approach, Urban testified he did a sales comparison approach, by which he identified seven comparable sales in the northwest suburbs. He used the same seven sales for both his 2016 and 2017 appraisals. Those properties ranged in size from 291,789 square feet to 820,346 square feet. He noted that certain information was not available about those sales, including information on the terms of tenants' leases in the other properties.

¶ 34       Under the sales comparison approach, Urban's 2017 appraisal determined the value of the subject property was $52 per square foot and that its fair market value was $27,110,000. Urban opined that the sales comparison approach was "secondary" to the income capitalization approach, due to the limited available information about other properties. In his testimony, Urban stated that

he determined the "final value" of the property as of 2017 was $27,110,000. However, his written appraisal indicates that after reconciling the different approaches, he appraised the property as $27,150,000 for tax year 2017.

¶ 35    On cross-examination, Urban acknowledged that in recent years there has been debate over whether tenant improvements and leasing commissions should be deducted as operating expenses, in the course of calculating income under the income approach.  Also on cross-examination, Urban agreed that of the seven properties he used for the sales comparison approach, several of them had lower occupancy rates than the subject property, and three of them had gone into foreclosure. Urban acknowledged that he did not personally run the search for comparable sales.

¶ 36                                  Board of Review's Case

¶ 37    Following Urban's testimony, the Board of Review was given the opportunity to present evidence. The Board of Review elected to rest on the written evidence previously submitted. The Board of Review did not present any appraisal or witness testimony.

¶ 38                              Intervenors' Expert Eric Dost

¶ 39    The intervenors elicited testimony from Dost. Before Dost was sworn in, the intervenors' counsel said: "While Mr. Dost is logging in we would ask that his appraisal which was submitted for both the '16 and '17 case be identified for the case purposes and admitted."  The ALJ agreed, and the petitioner's counsel did not raise any objection to Dost's appraisal being used for both the 2016 and 2017 appeals.

¶ 40    Dost testified that he has been a commercial real estate appraiser for 35 years. Without objection, he was accepted as an expert in commercial office appraisals for *ad valorem* tax purposes.

¶ 41        Dost proceeded to testify about his appraisal, in which he concluded the value of the fee simple interest of the property was $37 million as of January 1, 2016.

¶ 42        Dost acknowledged that the property sold in August 2016 for $32 million. He testified it had been "marketed as a Class A value add opportunity due to its below market occupancy" level of 73 percent. In addition, he noted that "the property's largest tenant [AC Nielsen] had a relatively short remaining lease term."

¶ 43        Dost recognized his appraisal of the subject property's market value ($37 million) was above the 2016 sales price of $32 million. However, he considered it "reasonable" as it was based on "stabilized market occupancy rates as well as market rents and expenses and cap rates as of the date of value and it was prepared consistent with ad valorem tax appraisal methodology for fee simple appraisals."

¶ 44        Dost testified the subject property has a total of 521,362 square feet of net rentable area, a large parking garage, and "good amenities." He stated there were $4.9 million in renovations and capital improvements from 2013 to 2015.

¶ 45        Dost testified that he used a land value analysis, a sales comparison approach, and an income capitalization approach to appraise the property's value. For the land value analysis, he "searched the market for comparable land sales" of commercial office developments. He included five land sales, with unadjusted prices ranging from $7.68 to $17.50 per square foot, with an average of $13.95 per square foot. He concluded that the market value of the land at the subject property was $13.50 per square foot, or $7.4 million.

¶ 46        For the sale comparison approach, Dost searched for "commercial multi-tenant office building sales" with multiple buildings. He identified six comparable sales, one of which had also

been included in Urban's analysis. The unadjusted price per square foot for those sales ranged from $47.13 to $150.01.

¶ 47    Dost testified he made adjustments based on various factors, including the nature of the property rights sold, conditions of sale, market conditions, age and conditions of the buildings, location, "land-to-building ratio or parking, economic characteristics, [and] construction characteristics." He considered whether to make an adjustment based on the fact that the comparable sales were leased properties and thus conveyed only the leased fee interest. However, he testified that "based on my analysis of the sales and the data available, it was my opinion that there was not a significant difference between the fee simple and lease[d] fee property rights."

¶ 48    Under the sales comparison approach, Dost determined that the market value of the subject property was $36,500,000, or $70 per square foot.

¶ 49    Dost then discussed his analysis under income capitalization approach. He reviewed the income and expenses for the subject property, including the rent roll Urban relied on. Dost also did a "market rent comparable" analysis, selecting five "rent comparable" properties that were summarized in his appraisal. Each of the properties was a multi-tenant office building located in either Schaumburg, Rolling Meadows, or Des Plaines. For each, he assessed the "effective rent," meaning the rent "after deductions for things like free rent concessions." The effective rental rates for the comparables ranged from $11.80 to $17.46 per square foot.

¶ 50    Based on the lease information for the subject property and the rent comparables, Dost concluded that the overall market rent for the property was $10.50 per square foot. Applying this rate to the subject property, he determined an effective gross income of $9,313,630.

¶ 51    In calculating gross income calculation, Dost (unlike Urban) did *not* deduct leasing commissions or tenant improvements as expenses. He testified that this was consistent with the practice of other appraisers:

> "Tenant improvements with leasing commissions are considered below the line expenses. It's defined in the Dictionary of Real Estate Appraisal, Fifth Edition, that's an expense *** below the line, the net operating income line and *** not considered part of the total operating expense for the property valuations. *** In addition, the PWC [Price Waterhouse Coopers] real estate investor survey for the first quarter of 2016, zero percent of investors in the Chicago office market deduct leasing commissions and tenant improvements."

Dost calculated that the net operating income for the subject property was $3,197,005, equivalent to $6.13 per square foot.

¶ 52    Dost selected an overall capitalization rate for the subject property by referring to comparable sales, the Price Waterhouse Coopers real estate investor survey, and by applying the "band of investment technique." He determined an appropriate capitalization rate was 8.5%. Applying this rate, Dost concluded the market value of the property was $37,500,000 as of January 1, 2016.

¶ 53    Thus, Dost concluded that the land value was $7.4 million, the market value under the sales comparison approach was $36.5 million, and the market value under the income approach was $37.5 million. In reconciling these approaches, Dost placed "significant emphasis" on both the sales comparison approach and the income approach. He concluded that the fair cash value of the property as of January 1, 2016 was $37 million.

¶ 54        Intervenors' counsel attempted to elicit Dost's opinion about the property's 2017 value, but the ALJ sustained petitioner's objection:

> "[INTERVENORS' COUNSEL]: Your report was submitted for the 2017 case, sir. Would your opinion of value change for that year?
>
> A. No.
>
> Q. Why not?
>
> A. Market conditions were relatively similar looking at the vacancy rate information.
>
> [PETITIONER'S COUNSEL]: Objection, Your Honor. Objection to the testimony with respect to a value he didn't put in. There is no report in evidence with respect to 2017.
>
> JUDGE ALLEN: I'll sustain."

Thus, the ALJ did not permit Dost to testify to his opinion on the subject property's value for the 2017 tax year.

¶ 55        On cross-examination by petitioner, Dost maintained that leasing commissions and tenant improvements are "considered below the line items and should not be deducted for valuation purposes." Dost further testified that his "rent comparable data was based on effective rents," which already took into account deductions for free rent, tenant improvements, and leasing commissions. He had applied a market rent for the subject property of $10.50 per square foot, which he believed "adequately considered rent concessions."

¶ 56                        Petitioner's Rebuttal Expert VanSanten

¶ 57        Petitioner elicited the expert testimony of John VanSanten, who had prepared a written review criticizing Dost's $37 million appraisal for tax year 2016.

¶ 58        VanSanten testified about several shortcomings he identified in Dost's analysis. Regarding the sales comparison approach, he criticized aspects of each of the six sales comparisons selected by Dost. For those properties, VanSanten noted that Dost did not make any kind of "adjustment for property rights conveyed," meaning a downward adjustment to reflect that they were sales of "leased fee" rights, instead of fee simple rights. He stated it "defies credibility" that Dost made no "property rights adjustment[s.]" VanSanten contrasted Dost's failure to make adjustments for these sales with how Dost treated the $32 million sale of the subject property: "there he thinks an adjustment does apply and he's estimating a value that's higher than the actual sale price of the 32 million. So there's just a huge inconsistency there ***."

¶ 59        VanSanten also opined that Dost's income approach was flawed. He noted that four of the five rental comparables identified by Dost "commenced after the January 1, 2016 date of value." He believed this was inappropriate because such transactions would not have been knowable to a buyer as of January 1, 2016. VanSanten stated that another "big issue" with Dost's income analysis was that he applied his estimated market rent to the entire square footage of the building, including common areas, when it should have been limited to "office rentable area."

¶ 60        Van Santen also testified that Dost's income analysis was flawed with respect to property taxes. According to VanSanten, Dost was "deducting a property tax expense that he estimates based on his conclusion of value from the sales comparison approach." In this manner, he believed Dost made a "circular argument" that assumed that his "sales comparison approach is correct." VanSanten opined this rendered Dost's "entire income approach unreliable."

¶ 61    On cross-examination, VanSanten acknowledged he is familiar with "USPAP", the Uniform Standards of Appraisal Practice.[2] VanSanten was asked if he believed Dost's appraisal comported with USPAP. He responded that Dost's appraisal was "unreliable and not credible" but VanSanten "wouldn't go so far [as] to say it violates USPAP."

¶ 62    During VanSanten's re-direct examination, petitioner's counsel asked:

> "Q. What year does Mr. Dost's report comply with USPAP for?
>
> A. January 1, 2016.
>
> Q. Does it apply for any other date of value?
>
> A. No, it does not."

At that point, intervenors' counsel objected. The ALJ sustained the objection, noting "I'm not sure *** if [VanSanten] reviewed 2016 how he would know about other years." Petitioner's counsel argued that VanSanten is "an expert in what is compliance with USPAP and I simply asked *** would it comply with USPAP for any other year other than the year stated in [Dost's] report." Nevertheless, the ALJ sustained the objection. Thus, VanSanten was precluded from testifying about any year other than 2016.

¶ 63                  The PTAB Decision Credits the Dost Appraisal as the Best Evidence of the
                        Subject Property's 2017 Market Value

¶ 64    In November 2022, the PTAB issued a written decision finding that some reduction from the Board of Review's assessment was warranted, although not as much as petitioner desired. The

---

[2] "The Uniform Standards of Professional Appraisal Practice (USPAP) is the generally recognized ethical and performance standards for the appraisal profession in the United States. USPAP was adopted by Congress in 1989, and contains standards for all types of appraisal services, including real estate ***." https://www.appraisalfoundation.org/imis/TAF/Standards/Appraisal_Standards/Uniform_Standards_of_Professional_Appraisal_Practice/TAF/USPAP.aspx?hkey=a6420a67-dbfa-41b3-9878-fac35923d2af

PTAB found that Dost's appraisal of the 2016 market value was the "best evidence" of the property's 2017 market value, and thus found the property had a market value of $37 million

¶ 65    The PTAB decision recognized that there had been a single hearing for both the 2016 and 2017 appeals, but it discussed only the evidence submitted with respect to the 2017 assessment. The PTAB noted that it had considered: the Board of Review's evidence regarding five comparable sales, as well as Urban's appraisal estimating market value of $27,150,000 as of January 1, 2017. The PTAB also recognized that the intervenors submitted Dost's appraisal—which concluded the market value was $37 million as of 2016 —as evidence of the property's 2017 value.

¶ 66    The PTAB decision also summarized the testimony of Urban and Dost on direct and cross-examination. The decision did not reference any testimony by VanSanten.

¶ 67    In its conclusions as to the 2017 market value of the property, the PTAB gave "little weight" to the Board of Review's evidence, finding it "consisted of five unadjusted sale comparables of office buildings that are not located near" the subject property.

¶ 68    The PTAB noted that petitioner and the intervenors both submitted appraisals "indicating the subject property [was] overvalued" by the Board of Review's assessment of $44,919,616 market value.

¶ 69    The PTAB  stated that it gave "less weight to the Urban appraisal and testimony." It was "not persuaded" by Urban's "deduction[s] from the subject's income for leasing commissions [and] tenant improvements." It also noted that "four of the eleven rental comparables in the Urban appraisal were marked 'Confidential' and were thus unverifiable."

¶ 70    Instead, the PTAB found the "best evidence of the 2017 market value to be the Dost appraisal which indicated the subject property's market value was $37,000,000 on January 1, 2016."

¶ 71         In doing so, the PTAB found "the comparable properties listed in the [Dost] appraisal are similar to the subject in building size, age, and land to building ratio." The PTAB "f[ound] credible Mr. Dost's analysis of the comparable sales, including his statement that he considered the property rights conveyed in the comparable sales and concluded they did not need to be adjusted since the value of a leased fee interest can be greater than or less than the leased fee interest depending on the relationship between the contract and market rent." Referencing Dost's income analysis, the PTAB also "agree[d] with Mr. Dost *** that leasing commissions [and] tenant improvements should not be included as operating expenses."

¶ 72         Accordingly, the PTAB found the subject property had a market value of $37 million as of the 2017 assessment date. The PTAB noted that the property was subject to assessment at 25% of market value under the Cook County Real Property Assessment Classification Ordinance. Thus, the PTAB determined that the correct assessed value was $9,250,000 for the 2017 tax year. Although this was a reduction from the Board of Review's assessment ($11,229,904), the PTAB's assessment was still far more than that sought by petitioner ($6,500,000).

¶ 73         Petitioner filed a direct appeal from the PTAB decision pursuant to Supreme Court Rule 335, which allows for "statutory direct review of orders of an administrative agency by the Appellate Court." (Ill. S. Ct. R. 335 (eff. July 1, 2017)), and section 16-195 of the Property Tax Code, which permits direct review of PTAB decisions in cases "where a change in assessed valuation of $300,000 or more was sought." 35 ILCS 200/16-195 (West 2022).

¶ 74         The matter has been fully briefed, including separate appellee briefs from the PTAB, the Board of Review, and from the intervenors.

¶ 75                                    ANALYSIS

¶ 76    On appeal, petitioner contends that the PTAB erroneously relied on Dost's appraisal and testimony pertaining to his appraisal of the subject property value as of 2016. Petitioner characterizes this as "improper and inadmissible evidence" for purposes of the 2017 tax year assessment. That is, petitioner suggests the PTAB was precluded from relying on Dost's appraisal, and so the PTAB's determination that the property was worth $37 million was against the manifest weight of the evidence. It also suggests that it was deprived of the chance to submit rebuttal evidence, and that the PTAB's "failure to consider [VanSanten's] rebuttal expert testimony" regarding tax year 2017 was prejudicial error that requires reversal. Finally, it contends we should otherwise find error because the best evidence of the property's value was its $32 million sale price from 2016.

¶ 77    For the following reasons, we find these contentions are without merit and affirm.

¶ 78                              Standard of Review

¶ 79    Final decisions of the PTAB are subject to review under the Administrative Review Law, 735 ILCS 5/3-101 *et seq*. 35 ILCS 200/16-195 (West 2018).  Review lies directly in this court where, as here, a change in assessed value of $300,000 or greater is sought. *Id*.

¶ 80    The scope of our review "extend[s] to all questions of law and fact." 735 ILCS 5/3-110 (West 2018)). We review the PTAB's conclusions of law *de novo* and its resolution of mixed questions of law and fact for clear error. *Central Nursing Realty, LLC v. Illinois Property Tax Appeal Board*, 2020 IL App (1st) 180994, ¶ 32. However, the PTAB's "findings and conclusions on questions of fact" "are deemed '*prima facie* true and correct' (735 ILCS 5/3-110 (West 2020) and will be reversed only if they are against the manifest weight of the evidence, meaning that an opposite conclusion is clearly evident from the record." *Id*. (citing *Cook County Board of Review v. Property Tax Appeal Board*, 403 Ill. App. 3d 139, 143 (2010)).

¶ 81    "[W]eighing evidence and determining the credibility of witnesses are jobs of the PTAB and are uniquely its province." *Kraft Foods, Inc. v. Illinois Property Tax Appeal Bd*., 2013 IL App (2d) 121031, ¶ 51. This court "does not reweigh the evidence, reassess the credibility of the witnesses, substitute its judgment for that of the PTAB, or make an independent determination of the facts." *Id*.

¶ 82    The PTAB's finding regarding the fair market value of a property "will not be reversed unless it is against the manifest weight of the evidence, which occurs only where all reasonable and unbiased persons would agree that the decision is erroneous and that an opposite conclusion is clearly evident." *Central Nursing Realty* , 2020 IL App (1st) 180994, ¶ 39 (quoting *Kraft Foods*., 2013 IL App (2d) 121031, ¶ 51). "This court will not disturb the PTAB's findings where there exists simply a difference of opinion regarding the actual value of the property. [Citation.]" *Kraft Foods, Inc.*, 2013 IL App (2d) 121031, ¶ 51.

¶ 83    With this deferential standard in mind, we turn to petitioner's contentions.

¶ 84    The PTAB Was Not Barred from Considering Dost's Appraisal as Evidence for the 2017 Tax Year Valuation Merely Because the Appraisal Was From the Prior Tax Year

¶ 85    The petitioner's primary contention is that the PTAB erred in relying on Dost's appraisal for the 2016 tax year and Dost's corresponding hearing testimony, which it claims were "inadmissible" for purposes of establishing the subject property's fair market value for 2017. Although petitioner never objected to the use of Dost's appraisal at the hearing, it now suggests that the Dost appraisal was inadmissible hearsay, positing that: "once the ALJ excluded Dost from testifying about the 2017 value of the Subject Property, relying on the Dost Appraisal was additionally improper because the appraisal report constituted inadmissible hearsay without any

supporting testimony from Dost or opportunity to cross-examine Dost on the subject as it relates to tax year 2017."

¶ 86        Petitioner alternatively claims that the Dost appraisal could not be considered pursuant to the Illinois Administrative Code (Code) provisions governing appeals before the PTAB. Petitioner relies on section 1910.65(c) of the Code, which states that in appeals to the PTAB:

"Proof of the market value of the subject property may consist of the following:

1)  an appraisal of the subject property as of the assessment date at issue;

2)  a recent sale of the subject property;

3)  documentation evidencing the cost of construction of the subject property ***; or

4)  documentation of not fewer than three recent sales of suggested comparable properties***." 86 Ill. Adm. Code § 1910.65(c).

¶ 87        Petitioner suggests that because the Dost appraisal was for the 2016 tax year, and not "the assessment date at issue," it could not be considered as proof of market value under the Code. That is, petitioner suggest that only an appraisal for the specific tax year at issue (2017) could be considered. Petitioner proceeds to argue that it was prejudiced by the PTAB's reliance on the Dost appraisal, in part because it "led the ALJ to exclude the opinion testimony of VanSanten regarding property tax year 2017."

¶ 88        Petitioner's contentions regarding the admissibility of Dost's appraisal fail for multiple reasons. First, this claim is forfeited. "If an argument or objection is not made in an administrative proceeding, it is forfeited and may not be raised for the first time on administrative review." *Shawnee Community Unit School District No. 84 v. Illinois Property Tax Appeal Board*, 2022 IL

App (5th) 190266, ¶ 74 (petitioners forfeited argument that PTAB erred in permitting certain testimony, when petitioners did not object to that testimony at the hearing). The record reflects that petitioner never challenged the admissibility of Dost's written appraisal, before or during the PTAB hearing. The hearing transcript reflects that petitioner raised no objection when the intervenors' counsel offered it into evidence with respect to *both* tax years at issue, 2016 and 2017.

¶ 89    Forfeiture aside, we are unpersuaded that the PTAB was somehow precluded from considering Dost's appraisal as evidence. We note that although petitioner cites the general hearsay rule, it does not cite any case suggesting that an appraisal has been excluded from a PTAB hearing on this basis, especially when the author of the appraisal was available for cross-examination at the hearing. In any event, the governing Code provisions contemplate an informal, liberal approach to admission of evidence in PTAB proceedings. Section 1910.92 of the Code states: "The Property Tax Appeal Board shall establish by rules *an informal procedure* for the determination of the correct assessment of property which is the subject of an appeal. The procedure, to the extent that the Board considers practicable, *shall eliminate formal rules of pleading, practice and evidence.*" (Emphases added.) 86 Ill. Adm. Code § 1910.92(a). Further, the Code broadly indicates that the PTAB may consider any evidence that it deems relevant:

> "The Board or its designated Hearing Officer *will receive evidence that is material and relevant*, and that would be commonly relied upon by reasonably prudent persons in the conduct of their affairs, provided that the rules relating to privileged communications and privileged topics are observed." (Emphasis added.) *Id*. §1910.92(b).

Notably, petitioner does not attempt to argue that Dost's appraisal was not "material and relevant" to the value of the subject property.

¶ 90    Similarly, we reject petitioners' suggestion that section 1910.65 of the Code prevented the PTAB from considering the Dost appraisal as evidence merely because it was prepared for the prior tax year. We acknowledge that section 1910.65 says that proof of market value "may consist of" "an appraisal of the subject property as of the assessment date at issue." *Id*. § 1910.65. Yet, in construing this provision, this court has recognized that "[l]egislative of the word 'may' is construed as permissive, not mandatory." *Cook County Board of Review v. Property Tax Appeal Board*, 334 Ill. App 3d 56, 59 (2002) (explaining that section 1910.65 "sets out the types of proof that *may* be submitted.")

¶ 91    There is no support for petitioner's suggestion that section 1910.65 bars the PTAB from considering appraisals from a different year than the assessment year at issue. To the contrary, this court held that section 1910.65 was *not* violated when the PTAB relied on a 1995 appraisal to determine a property's fair market value for 1997. *Cook County Board of Review*, 334 Ill. App 3d at 59. This is entirely consistent with section 1910.92(b), which affords the PTAB discretion to consider any material and relevant evidence. 86 Ill. Adm. Code §1910.92(b).

¶ 92    Further, "An administrative agency's decision regarding the conduct of its hearing and the admission of evidence is governed by an abuse of discretion standard and is subject to reversal only if there is demonstrable prejudice to the complaining party." *John J. Maroney and Co. v. Illinois Property Tax Appeal Board*, 2013 IL App (1st) 120493, ¶ 50. An abuse of discretion regarding an evidentiary ruling occurs only where no reasonable person would take the position adopted by the PTAB. *Id*. ¶¶ 50-51; *West Loop Associates*, *LLC v. Property Tax Appeal Board*, 2017 IL App (1st) 151998, ¶ 40.

¶ 93    Here, the PTAB apparently concluded that the Dost appraisal was admissible as relevant evidence of the subject property's value as of 2017, notwithstanding that it was prepared as an

appraisal for the prior tax year. We cannot say that determination was so unreasonable as to constitute an abuse of discretion. In this regard, we agree with appellees that petitioner confuses the *admissibility* of the Dost appraisal with the *weight* of the evidence. Certainly, the PTAB, in its role as factfinder, could have decided to give less weight to Dost's appraisal based on the fact that it was prepared for a year prior to the tax year at issue. Yet this is very different from petitioner's position that the PTAB was barred from considering it altogether. There is simply no support for the contention that the Dost appraisal was inadmissible.

¶ 94　　　　　Petitioner's Claims of "Prejudice" Resulting from Consideration of the Dost

Appraisal Are Without Merit

¶ 95　　Petitioner makes a number of related contentions that the PTAB's reliance on the Dost appraisal caused it to be prejudiced. None of these claims is convincing.

¶ 96　　Among these, petitioner claims that reliance on the Dost appraisal resulted in a "drastic overvaluation" of the subject property because "the only admissible evidence" consisted of Urban's 2017 appraisal that valued the property at $27,150,000, and the $32 million sale price from 2016. This claim relies on the erroneous premise that the Urban appraisal was wholly inadmissible and could not be considered. As discussed *supra*, there is no support for that position.

¶ 97　　Petitioner alternatively claims that the PTAB's reliance on the Dost appraisal was prejudicial because it "effectively precluded Petitioner from any rebuttal." Petitioner suggests that because intervenors submitted Dost's appraisal of the 2016 market value as evidence for tax year 2017, rather than submitting a separate appraisal specifically directed to 2017 market value, "there was nothing to rebut." Thus, petitioner contends that the PTAB's reliance on Dost's appraisal deprived it of "any meaningful opportunity to rebut the applicability of that appraisal report" to tax year 2017.

¶ 98      This argument fails, for the simple reason that petitioner could have, but elected not to, submit any rebuttal evidence for tax year 2017. Although Dost's appraisal assessed the property's value as of 2016, there is no dispute that intervenors submitted that appraisal in conjunction with *both* petitioner's 2016 and 2017 appeals to the PTAB. Under the Code, petitioner had the opportunity to submit written rebuttal evidence to the Dost appraisal for either year. See 86 Ill. Admin. Code § 1910.66(a)(3) ("any party shall have 30 days after first receipt of the argument and written documentary evidence filed by an opposing party to file written or documentary evidence in rebuttal. Rebuttal evidence shall consist of written or documentary evidence submitted to explain, repel, counteract or disprove facts given in evidence by an adverse party ***.")

¶ 99      Petitioner did in fact submit rebuttal evidence for its appeal *regarding tax year 2016*, by submitting VanSanten's report criticizing Dost's appraisal. Yet, petitioner did not designate VanSanten's report or any other evidence as rebuttal evidence for tax year 2017**,** notwithstanding that Dost's appraisal was indisputably submitted by intervenors as evidence of the property's value for both 2016 and 2017.

¶ 100     Petitioner's claim that there was "nothing to rebut" apparently reflects a mistaken belief that it could not submit anything in rebuttal, because intervenors submitted the Dost appraisal (which concerned tax year 2016) as evidence for the property's value as of tax year 2017. Yet, as discussed *supra,* the PTAB was free to consider the Dost report as relevant evidence for tax year 2017, even if it was prepared for the prior year. See *Cook County Board of Review*, 334 Ill. App. 3d at 59. By the same measure, nothing prevented petitioner from submitting rebuttal evidence criticizing the Dost appraisal, insofar as it was submitted as evidence for tax year 2017. Indeed, it is somewhat surprising that petitioner did not submit VanSanten's written critique of Dost's appraisal as rebuttal evidence for its appeal regarding tax year 2017, just as it submitted

VanSanten's report as rebuttal evidence for its 2016 tax year appeal. In any event, petitioner cannot claim it was prejudiced by its own decision not to submit rebuttal evidence.

¶ 101            The ALJ Did Not Err in Excluding VanSanten's Testimony Regarding Tax Year 2017

When His Rebuttal Report Was Limited to Tax Year 2016

¶ 102        Petitioner otherwise claims it was prejudiced when the ALJ barred VanSanten from testifying on re-direct examination regarding "the applicability and accuracy of the Dost Appraisal to the 2017 tax year." Petitioner complains that the PTAB's final decision for tax year 2017 "lacked any mention of VanSanten or the testimony he previously offered addressing the shortcomings in the Dost Appraisal for tax year 2016." As a result, it claims the PTAB erroneously relied on Dost's appraisal and overvalued the subject for tax year 2017.

¶ 103        We reiterate that an abuse of discretion standard applies to evidentiary rulings; an abuse of discretion occurs only where no reasonable person would take the position adopted by the PTAB. *John J. Maroney and Co.*, 2013 IL App (1st) 120493, ¶ 50. Here, we cannot say it was unreasonable to exclude VanSanten from testifying about years other than 2016. We emphasize that VanSanten's report criticizing Dost's appraisal was offered as rebuttal evidence *only* for petitioner's tax year 2016 appeal. Petitioner could have, but did not, offer any report from VanSanten as rebuttal evidence concerning tax year 2017.

¶ 104        Moreover, the hearing transcript shows that the ALJ's decision to limit VanSanten's testimony to tax year 2016 was entirely consistent with her prior ruling, in which she sustained *petitioner's* objection and similarly limited Dost's opinion testimony to the 2016 tax year. In other words, the ALJ first *agreed with petitioner* that Dost could not testify about the 2017 value of the property because his written appraisal was directed to 2016. It then held that VanSanten should not be able to testify in rebuttal as to the 2017 tax year. That is, the ALJ limited both Dost and

VanSanten to testimony concerning tax year 2016. These rulings were entirely reasonable and consistent with the circumstances that: (1) the Dost appraisal (while offered for both 2016 and 2017) only discussed the property value as of 2016, and (2) petitioner elected to submit VanSanten's report as rebuttal evidence only with respect to the 2016 tax year appeal.

¶ 105    In turn, petitioner cannot claim it was prejudiced by the fact that the PTAB's decision for tax year 2017 did not reference the VanSanten report. Moreover, even assuming *arguendo* that the PTAB had expressly considered VanSanten's excluded testimony—in which he indicated he did not believe Dost's appraisal complied with USPAP standards for tax year 2017—we have no reason to believe it would have altered the PTAB's analysis and final decision to credit Dost's appraisal as the best evidence of the property's value.

¶ 106    The 2016 Sale Price Did Not Limit the PTAB's Ability to Assess a Higher Value

¶ 107    Finally, petitioner urges that the PTAB's assessment of $37 million must be contrary to the manifest weight of the evidence, because it exceeded the $32 million sale price from the subject property's sale in 2016. Petitioner cites the principle that an arm's length sale is generally recognized as the best evidence of a property's fair cash value. See *Kraft Foods*, 2013 IL App (2d) 121031, ¶ 43. Petitioner suggests the 2016 sale price "should have provided a ceiling" as to fair market value, the "highest possible value the PTAB could have assessed."

¶ 108    "Illinois law requires that all real property be valued at its fair cash value, estimated at the price it would bring at a fair voluntary sale where the owner is ready, willing and able to sell but is not compelled to do so ***." *Kraft Foods, Inc.*, 2013 IL App (2d) 121031, ¶ 43. " 'Fair cash value' " is synonymous with fair market value, and an arm's-length sales transaction is the best evidence thereof. [Citation.]"

¶ 109　　　While we acknowledge the principle that an arm's-length sales transaction is the best evidence of fair market value, we find no support for petitioner's suggestion that the 2016 sale price set a "ceiling" that constrained the PTAB from assessing a higher value, regardless of any other evidence. We reiterate that the Code contemplates that the PTAB may consider "evidence that is material and relevant, and that would be commonly relied upon by reasonably prudent persons in the conduct of their affairs." 86 Ill. Adm. Code §1910.92(b).

¶ 110　　　Here, the PTAB credited Dost's appraisal and related testimony, in which he explained why he did not think the $32 million sale price reflected the full market value. Dost emphasized that the $32 million sale was for a leased fee interest, not a fee simple interest. He also explained that the property had been "marketed as a Class A value add opportunity due to its below market occupancy" of 73 percent. In his testimony, Dost acknowledged his appraisal of market value was "above the recent price" but "considered it reasonable since it's based on stabilized market occupancy rate as well as market rents and expenses and cap rates as of the date of value." Dost then explained his analysis under the sales comparison approach (under which he found the value was $36.5 million) and the income approach, by which he found the value was $37.5 million.

¶ 111　　　 We again note that although Dost's appraisal was directed to the property's 2016 market value, it was also offered (without any objection) as evidence of the 2017 market value. PTAB was permitted to credit that evidence in evaluating the 2017 market value. Thus, we reject petitioner's suggestion that the PTAB could not find the subject property was worth more than the 2016 sale price.

¶ 112　　　In concluding, we reiterate that the PTAB's finding of fair market value "will not be reversed unless it is against the manifest weight of the evidence, which occurs only where all reasonable and unbiased persons would agree that the decision is erroneous and that an opposite

conclusion is clearly evident." *Central Nursing Realty*, 2020 IL App (1st) 180994, ¶ 39 (quoting *Kraft Foods*, 2013 IL App (2d) 121031, ¶ 51). "If there is any evidence which fairly supports the agency's findings, the decision must be sustained on review." (Internal quotation marks omitted.) *John J. Moroney and Co.*, 2013 IL App (1st) 120493, ¶ 36.

¶ 113　　　　Here, the PTAB credited Dost's $37 million appraisal as the best evidence of the property's fair market value for the tax year 2017. It was permitted to do so, notwithstanding that the appraisal was prepared for the previous tax year. That evidence was admissible, and the PTAB's corresponding valuation of the subject property was not against the manifest weight of the evidence.

¶ 114　　　　　　　　　　　　　　　　CONCLUSION

¶ 115　　　　For the foregoing reasons, we affirm the decision of the PTAB.

　　　　Affirmed.